# WILLIAM A. POOLER

## v.

## PHILANY CRISTMAN ET AL.

*Wills—Undue Influence—Testamentary Capacity—Extreme Age and Physical Infirmities as Affecting—Instructions—Evidence.*

Upon the submission to a jury of the question of the validity of a will, where the grounds of contest were undue influence and testamentary incapacity, and the court told the jury that the following were not grounds for inferring undue influence, viz., "that the beneficiaries of a will are those by whom the testatrix was surrounded and with whom she stood in confidential relations at the time of the execution of the will, or the fact that the principal beneficiaries had, for years, control of her estate, or the fact that the provisions of the will were for the benefit of such persons, or may seem unreasonable," and where the court further told the jury that "great age and weakness and bodily infirmity would not render the testatrix incapable of disposing of other property as she saw fit," *held,* that while these instructions were defective, as tending to exclude from the attention of the jury facts which it was proper for them to consider in arriving at their verdict, yet, as other portions of the instructions materially modified them and correctly stated the law, they did not constitute reversible error.

[Opinion filed December 12, 1892.]

APPEAL from the Circuit Court of De Kalb County; the Hon. HENRY B. WILLIS, Judge, presiding.

Messrs. C. A. BISHOP, CARNES & DUNTON, and T. M. CLIFFE, for appellant.

Messrs. JONES & ROGERS, and CHARLES E. FULLER, for appellees.

MR. JUSTICE LACEY. This was a bill in equity, filed by the appellant against Philany Cristman and Louisa C. Cristman, legatees of the purported last will and testament of Margaret Pooler deceased, their mother, and Alonzo Ellwood, the administrator of the estate of Margaret Pooler, with the will annexed, appellees in this case.

The bill charged that on the 23d of December, 1887, Margaret Pooler, now deceased, executed a written instrument, purporting to be her last will and testament, and that afterward, on April 15, 1891, she departed this life, leaving surviving as heirs at law, besides appellant, Philany and Louisa C. Cristman, both widows; that Henry Pooler, husband of Margaret Pooler, had died prior to her death. The purported will is set forth and shows that it was witnessed by George S. Robinson and Alonzo Ellwood, and that the testatrix bequeathed, after the payment of all her just debts and funeral expenses, all the rest, residue and remainder of her estate, real and personal, to her daughters, Philany and Louisa C. Cristman in equal shares, share and share alike, and in the case of the death of either of them prior to her decease, the child or children of such deceased daughter to take the share such deceased daughter would take if living; and the said Philany and Louisa C. Cristman were nominated executrixes in said will, without being required to give bond; that the will was probated in the County Court of said county, on October 15, 1891, and the two executrixes nominated in the will refusing to qualify, Alonzo Ellwood was appointed administrator with the will annexed. The bill then charges that Margaret Pooler, at the time of making the instrument in question, had not sufficient capacity to execute the same on account of her dotage and mental weakness, she being eighty-six years of age, and in fact was not in a testamentary condition of mind; that said Philany and Louisa C. Cristman exercised undue influence over the mind of the said Margaret Pooler, and induced her by fraud and intimidation to execute the said instrument, and that she was under improper restraint and undue influence by said acts. The bill charges that the inventoried estate of Margaret Pooler, deceased, was $5,557.62, but that deceased had property not inventoried to the amount of $5,000 more, and avers her estate would amount to about $15,000 at the time of her decease. The appellees answered the said bill, denying that the purported will was procured by the undue influence of appellees, Philany or Louisa C. Cristman, or

by one or both of them, and averring the complete mental capacity of the deceased, Margaret Pooler, to execute the will, and that she did execute it with her own free will and accord, uninfluenced by any one. The court thereupon made up the required issue of fact in such case, to wit:

"Is the writing produced the will of Margaret Pooler?" This issue of fact was tried before a jury in due form, and it found the issue in favor of the appellees, the proponents of the will. The court thereafter overruling a motion for a new trial, decreed that the probate of the said will in the County Court, and the proceedings thereunder, be and the same were ratified and confirmed, and that the bill be dismissed for the want of equity, and that complainant pay the costs. The appellant is the son of Margaret Pooler, and the brother of the daughters Cristman.

There was a large amount of evidence offered and given to the jury on either side, some thirty witnesses on the part of the appellees and nineteen or twenty on the part of appellant, touching the testamentary capacity of the deceased, Margaret Pooler. The evidence, as is nearly always the case, was somewhat conflicting, but after a reading of it in full we are of the decided opinion that a clear preponderance of it is in favor of the soundness of mind of the testatrix and her capacity to make the will, and that the appellant failed to show any undue influence exerted on the mind of the deceased by her daughters Cristman. The subscribing witnesses both fully support the will and legal capacity of Mrs. Pooler, and their evidence is corroborated by numerous other witnesses. It would consume too much time and serve no useful purpose to examine the evidence in detail, so we will content ourselves by announcing our conclusions in general, on the weight of the evidence.

The appellant complains of the action of the court in excluding certain evidence offered by him, and also of the giving instructions one and ten, for appellees. These are the only alleged errors complained of. The evidence offered by appellant, and rejected by the court, of which appellant complains, was the will of Henry Pooler, through which

Margaret derived her estate, for the purpose, as we understand, of showing how much estate Margaret had. We think the will was not the best evidence of that fact, if it were a material matter. The settlement of it in the Probate Court would be the proper evidence of that fact. It was not very material to show the exact amount of Margaret's property, as, if she had the mental capacity to make a will, the amount of her property was not very material, and it would not be material to show that she had spent a considerable portion of the estate coming from her husband, unless it could be shown in some way that she had squandered her means in an irrational manner, which was not attempted. The agreement of settlement between the appellant and the appellees of matters pertaining to the father's estate, in which Margaret Pooler relinquished a portion of her claim against the estate of Henry Pooler, deceased, was foreign to the issue being tried. If this offered evidence was intended for the purpose of showing that Philany and Louisa C. Cristman had exercised undue influence on Henry Pooler, as charged in the bill, in the execution of his will, and that they had been compelled to settle by the threatened suit of appellant, it were wholly incompetent, as that controversy had nothing to do with this. It could only have the effect to distract the minds of the jury from the real issue and be trying an issue not involved. We will now proceed to notice the instructions complained of by appellant as being erroneously given on the part of appellees. They are the first and tenth, and are alleged to be erroneous because, as is claimed, they take from the jury certain facts therein enumerated, from which mental incapacity might be inferred, and are misleading. The court tells the jury in the first instruction given for appellees, that the following are "not grounds for inferring undue influence," viz.: "That the beneficiaries of a will are those by whom the testatrix was surrounded and with whom she stood in confidential relations at the time of the execution of the will, or the fact that the principal beneficiaries had for years control of her estate, or the fact that the provisions of the will were for the benefit

of such persons, or may seem unreasonable." If we read only thus far in the instruction the language would seem ambiguous, though not positively misdirecting, in the respect that it leaves it doubtful whether the court intended to exclude these facts from the jury as evidence to be considered, or whether it simply meant to say such facts would not be ground of themselves, standing alone and unaided by other evidence. But the latter part of the instruction is in the nature of a proviso, and amounts to saying that such facts are not grounds. "If you believe the testatrix had sufficient mind and memory at the time of the execution of the will, etc., and understood the business in which she was engaged, etc., and had a recollection of the property she meant to bequeath and of the persons to whom she meant to bequeath it, and if she executed the instrument voluntarily and of her own free will, then you should find the paper produced in evidence is the will of Margaret Pooler." Evidently, if these last enumerated facts were found, then the first enumerated facts are not grounds from which to infer undue influence. We think this instruction is not in itself so misleading as to require reversal, especially in view of the full and complete instructions given on part of the appellant. The tenth instruction is as follows:

"You are further instructed that the mere fact that a person is of great age creates no presumption against the ability of such person to dispose of property by deed or will, and in this case, although you may believe from the evidence that the testatrix, Margaret Pooler, at the time of executing the paper in question, was of about the age of eighty-six years, and suffering, to some extent, from weakness or bodily infirmity, yet such circumstances would not render her incapable of disposing of her property by will as she saw fit."

The latter part of the instruction is defective in not saying that "such circumstances would not alone render her incapable of disposing of her property by will as she saw fit." While the instruction is not drawn with the care it should be, we can not think the jury would understand that they

were told not to consider the age of the testatrix in evidence as a circumstance bearing on the question of her capacity to make a will. Rutherford v. Morris, 77 Ill. 408. But the court, on the part of appellant, gave his eighth and ninth instructions, and submitted to the jury thereby to find incapacity to make a will from "mental weakness arising from bodily infirmity or old age," etc. This was the same in both those instructions, and thus the jury could see that under all the evidence it could find mental incapacity to execute the will from those causes, but from those alone it could and ought not to do so. It is only by construction and inference that the instructions can be said to exclude age and other facts therein named, from the jury, as circumstances to be considered in determining incapacity and undue influence, and in that condition they ought to be considered sufficiently explained by appellees' instructions.

We can not see how there could be any serious misunderstanding on the part of the jury, arising from those instructions given for appellees, complained of.

We think substantial justice has been done in the case and therefore the decree is affirmed.

*Decree affirmed.*

MR. JUSTICE CARTWRIGHT, dissenting. The bill in this case alleged that the testatrix, Margaret Pooler, was incapable of making a valid will on account of mental weakness consequent upon old age and physical infirmity, and also charged the exercise upon her of undue influence, by Philany Cristman and Louisa C. Cristman, the beneficiaries under the will. The inquiry before the jury was concerning these averments of the bill, and as to each of them the evidence was conflicting. It was proven that the testatrix was a widow, eighty-six years old at the time the will was made, living in a part of her house with an attendant who cared for her wants, and chiefly occupied in smoking her pipe and talking with her attendant and others about commonplace matters and the occurrences of her early life. The chief witnesses in support of the will and

of her general mental capacity were the attorney who
drafted the will and the person who took the attorney to
the residence of testatrix to have it done. Their testi-
mony was much weakened by evident inability to recollect,
arising perhaps from impaired memory, and also by differ-
ences in their testimony from that given in the County
Court at the time the will was admitted to probate. One of
them was also discredited by the testimony of several wit-
nesses who testified to statements made out of court touch-
ing the mental capacity of testatrix, at variance with the
opinion given on this trial. These parties were the sub-
scribing witnesses and were the only persons present
when the will was made except Philany Cristman. Other
witnesses testified to opinions that testatrix was competent
to transact such ordinary business as she had been accus-
tomed to do in earlier life, and that while her mind was
impaired by age, yet it was good for a woman of her years.
On the other hand witnesses testified to a want of testa-
mentary capacity, based upon facts and circumstances under
their observation. There was also evidence tending to
prove that on account of advanced age and the weakness
and dependence incident thereto, she was under the influ-
ence of the beneficiaries of the will, who managed her
property and affairs to a considerable extent, and were in
frequent association with her. There was other evidence
tending to the conclusion that the will was the product of
the influence of the beneficiaries, as well as evidence that it
was in accordance with her expressed wishes and intention.
It seems to me that it was important that the jury should
be fairly instructed as to the law, and that all the facts and
circumstances properly in evidence bearing on the issues
should be considered by the jury, and that none of them
should be withdrawn from their consideration.

The court, at the request of appellees, gave the following
instructions:

"You are further instructed that the mere fact that a per-
son is of great age creates no presumption against the abil-
ity of such person to dispose of property by deed or will,

Pooler v. Cristman.

and in this case, although you may believe from the evidence that the testatrix, Margaret Pooler, at the time of executing the paper in question, was of about the age of eighty-six years, and suffering to some extent from weakness or bodily infirmity, yet such circumstances would not render her incapable of disposing of her property by will as she saw fit.

"The court instructs you that the fraud and undue influence which would render a will invalid must be connected with the execution of the will and operating at the time the will is made; and the fact that the beneficiaries of a will are those by whom the testatrix was surrounded and with whom she stood in confidential relations at the time of the execution of the will, or the fact that the principal beneficiaries had for years control of her estate, or the fact that the provisions of the will were for the benefit of such persons, or may seem unreasonable, are not grounds for inferring undue influence; and, in this case, if you believe from the evidence that the testatrix, Margaret Pooler, had sufficient mind and memory at the time of the execution of the will in question to know and understand the business in which she was engaged at the time she executed the will, and a recollection of the property she meant to bequeath and of the persons to whom she meant to bequeath it, and that she executed the said instrument voluntarily and of her own free will, then you should find by your verdict that the paper produced is the will of Margaret Pooler."

Old age is not a disqualification, nor does that fact alone establish a want of capacity to make a valid will. Great age is not a certain criterion nor a conclusive test of infirmity, and there is no arbitrary limit set, beyond which an aged person may not make a valid will; but although the law does not assign a limit, common observation and experience raise an inference of the probable decay of the mental powers in old age. Experience teaches that the age of a person is a material consideration in determining ability to act intelligently. The general observation is that mental

weakness and impairment of the faculties are usually consequent upon and coincident with extreme old age. When the fact of great age was proven, the jury might properly take it into account as an important consideration in determining whether its usual concomitant of mental disability existed as a consequence in any degree. The inference arising from it was not such as the jury was compelled to draw if the other facts when taken with it did not support the inference, but the usually experienced connection of the two would at least demand that in the determination whether one fact existed, the other fact upon which it is usually consequent should not be withdrawn from the jury, nor the jury be told to ignore it as not authorizing any inference. In Moyer v. Swiggart, 125 Ill. 262, it is said that one of the facts in the case that must have been considered by the jury in coming to a conclusion, and which was entitled to weight in weighing other testimony, was that the decedent at the time of executing the alleged will was in the eighty-seventh year of his age. The testatrix in this case was in her eighty-seventh year, and whether her great age had affected her ability to dispose of her property by will, was a question of fact for the jury to find from all the evidence, uninfluenced by the court. The effect of the instruction on that subject was to inform the jury that the fact of great age could have no influence upon her ability, but that she was to be regarded the same as if in the prime of life. This was invading the province of the jury.

The instruction concerning undue influence seems to me objectionable also. It is true that the unreasonable character of a will does not render it invalid where testamentary capacity, formal execution and freedom from fraud or undue influence all appear. No jury can pronounce a will invalid merely because they disapprove of it, but evidence of the relations of a testator to the natural objects of his bounty and their pecuniary condition, as well as any evidence tending to show the natural or unnatural character of the will, has always been considered competent on the issue of undue

influence, for the reason that the justice or injustice, the reasonableness or unreasonableness of the provisions of the will, are to be considered when that issue is being tried. Anything in the character of the will which renders it contrary to the ordinary natural impulses of mankind, when free to act in accordance with them, where the evidence indicates it to be without any just cause, naturally tends to the inference that the testator was not free to act in accordance with his natural impulses. It may be correct to say that the unreasonable character of a will is never alone sufficient to prove undue influence, but the same may be said of other evidence tending to create the inference. Issues relating to undue influence are generally determined upon circumstantial evidence, and upon inferences drawn from a full presentation of facts, inconclusive when taken separately. The facts might all be separated, and a rule declared as to each that it was insufficient. Direct proof of undue influence is not usually attainable, but it must be established, if at all, by inference from all the circumstances taken together. Common prudence prevents one who exerts such influence from doing it in the presence of others who might be witnesses to the fact, and it must be proven in other ways. In Salisbury v. Aldrich, 118 Ill. 199, it is said that inequality in the distribution of property is a circumstance tending to establish undue influence, although not conclusive and sufficient for that purpose. In Schneider v. Manning, 121 Ill. 376, in approving an instruction, it is said that had the jury been told that injustice or inequality of disposition of property by will was not a circumstance to be considered, a different question might arise, but that the instruction under consideration did not conflict with that rule. See, also, Kimball v. Cuddy, 117 Ill. 213; Patterson v. Patterson, 6 Serg. & R. 55; Clark v. Fisher, 1 Paige, 171; Schouler on Wills, Sec. 242; 1 Redfield on Wills, 516; 1 Jarman on Wills, 5th Am. Ed. 139, note E. This instruction embraced not only the element of unreasonableness in the will, but other facts properly in evidence bearing on the issue of undue influence. Evidence tending to show that the testatrix was so situated

with respect to the beneficiaries as to be easily affected by influence exercised by them, was competent and proper to be considered by the jury. Evidence that the testatrix was surrounded by the beneficiaries and stood in confidential relations with them, and that her estate was under their control, all tended to prove that fact. It tended to prove both ability and opportunity on the part of the beneficiaries. By the instruction the jury were told that no inference was to be drawn by them from these facts on the question of undue influence, and although the instruction in the latter part required that the instrument should be executed voluntarily and of the free will of the testatrix, yet they had already been told that upon that question these facts were of no consequence and not ground for any inference. Instructions were given at the request of appellant which stated the rules of law correctly concerning incapacity and undue influence, but in my judgment they did not cure the error in giving the above instructions, inasmuch as the latter told the jury emphatically that the facts properly in evidence upon the issues made and tried should have no effect in deciding those issues. The instructions practically withdrew the evidence of the facts recited from their consideration, and deprived appellant, who had introduced it, of all benefit of it. I think that this was reversible error.