## ELLEN SCHNEIDER *et al.*

### *v.*

## JOHN L. MANNING *et al.*

*Filed at Ottawa June 17, 1887.*

1. TESTAMENTARY CAPACITY — *of the various tests and evidences in respect thereto.* The fact that a man may become prejudiced against some of his children without sufficient cause, and may make unjust remarks against them not warranted by the facts, does not show that he has insane delusions, or is devoid of testamentary capacity.

2. A person capable of transacting ordinary business, such as buying and selling property, settling accounts, collecting and paying out money, or bor-

rowing or loaning money, is also capable of making a valid will. If he is capable of acting rationally in the ordinary affairs of life, so that he may comprehend what disposition he may wish to make of his property, and be able to select the objects of his bounty, he is capable of making a will.

3. An owner of property who has capacity to attend to ordinary business, has the right to dispose of it by deed or will, as he may choose; and it requires no greater mental capacity to make a valid will than to make a valid deed.

4. A testator has a right to leave his property to his children or other relatives in unequal proportions, and such disposition is valid, whether it be reasonable or unreasonable, just or unjust; and the reasonableness or justice or propriety of his will are not questions for the jury to pass upon, except, perhaps, in so far as they may be considered as a circumstance in determining as to the testamentary capacity of the testator.

5. On the contest of a will, where there is evidence before the jury that the testator was eccentric and peculiar, there is no error in instructing the jury that eccentricities or peculiarities will not necessarily render a man incapable of making a will.

6. EVIDENCE—*opinion of witness as to sanity.* After witnesses had testified in regard to a testator's mind, and his capacity for transacting business, from their acquaintance and personal knowledge of him, they were asked, "Had he the mental capacity to dispose of his property by will or deed?" *Held,* that the question should not have been allowed, but as the answer thereto added but little weight to the previous testimony of the witnesses, the error was not of such gravity as to require a reversal.

7. On the trial of an issue as to the sanity of a testator, a medical expert having been called as a witness by the defendants, testified that he had heard all the evidence introduced by the contestants. He was then asked: "Having heard that evidence on the part of the contestants, state whether or not, in your opinion, from a medical standpoint, from that evidence, H. M. was of sound or unsound mind on" the date of the will: *Held,* that the question was admissible.

WRIT OF ERROR to the Circuit Court of Lake county; the Hon. C. W. UPTON, Judge, presiding.

Mr. JAMES S. MURRAY, for the plaintiffs in error:

As to what constitutes an insane delusion, see *Bible Society* v. *Price,* 115 Ill. 632; *Dow* v. *Clark,* 3 Add. 90; *Broughton* v. *Knight,* 3 Law Rep. 64.

In a case of doubt as to the mental capacity of the testator, or as to the exercise of undue influence, the reasonableness

of the will and the dispositions made are proper subjects for the jury to consider. *Betts·* v. *Jackson,* 6 Wend. 176; *Clark* v. *Fisher,* 1 Paige, 171; *Dennison's Appeal,* 39 Conn. 405; *Bitner* v. *Bitner,* 65 Pa. St. 362; *Kevill* v. *Kevill,* 2 Bush, 614; *Harrell* v. *Harrell,* 1 Duv. 203; *Lamb* v. *Lamb,* 105 Ind. 457; *Duffield* v. *Morris,* 2 Harr. 381; *Kimball* v. *Cuddy,* 117 Ill. 213.

The fourth instruction was erroneous. It was to the effect that eccentricities or peculiarities will not necessarily render a man incapable of making a will, and that if the testator had sufficient mind and memory to understand the business he was engaged in, the jury should find in favor of the will, even though he was eccentric.

The court erred in allowing a witness to give his opinion as to whether the testator had the mental capacity to dispose of his property by deed or will. *DeWitt* v. *Barley,* 17 N. Y. 340; *Griffin* v. *Ing,* 3 Dev. 358; *Gibson* v. *Gibson,* 9 Yerg. 322; *May* v. *Bradlee,* 127 Mass. 419; *White* v. *Bailey,* 10 Mich. 155; *Kempsey* v. *McGinness,* 21 id. 123; *Farrell* v. *Brennan,* 32 Me. 328; *M'Clintock* v. *Cord,* id. 411; *Fairchild* v. *Bascom,* 35 Vt. 398.

The court erred in allowing the medical expert to answer certain questions. *Regina* v. *Frances,* 4 Cox C. C. 57; *Sills* v. *Brown,* 38 Eng. C. L. 353; 67 Hansard, 614; *Railroad Co.* v. *Maffitt,* 75 Ill. 524; *Guiterman* v. *Steamship Co.* 83 N. Y. 358; *Buxton* v. *Potter's Works,* 121 Mass. 446; *Carpenter* v. *Transportation Co.* 71 N. Y. 575; *Reynolds* v. *Robinson,* 64 id. 589; *Phillips* v. *Starr,* 26 Iowa, 349; *Rust* v. *Magee,* 36 Ind. 71; *Tingley* v. *Cowgill,* 48 Mo. 292; *State* v. *Felter,* 25 Iowa, 67; *McMeechem* v. *McMeechem,* 17 W. Va. 683; *Spear* v. *Richardson,* 37 N. H. 34; *Teft* v. *Wilcox,* 6 Kan. 58; *Negro "Jerry"* v. *Townsend,* 9 Md. 145; *Page* v. *State,* 61 Ala. 17; *Bishop* v. *Spining,* 38 Ind. 144.

Messrs. Whitney & Upton, and Mr. Robert Hervey, for the defendants in error:

The question whether the will is just or unjust, reasonable or unreasonable, can not be urged as evidence of unsound mind. *Rutherford* v. *Morris*, 77 Ill. 397; *Carpenter* v. *Calvert*, 83 id. 62; *Freeman* v. *Easly*, 117 id. 317.

If the mind and memory are sufficiently sound to enable him to know and understand the business in which he is engaged at the time of executing his will, then he is of sound mind and memory, within the meaning of the law. *Meeker* v. *Meeker*, 75 Ill. 260; *Yoe* v. *McCord*, 74 id. 33; *Trisk* v. *Newell*, 62 id. 196; *Brown* v. *Riggin*, 94 id. 560; *Carpenter* v. *Calvert*, 83 id. 62; *Freeman* v. *Easly*, *supra*.

A non-professional witness may give his opinion upon the state of mind of a party, as the result of his own observations, accompanied with a statement of the facts which he has observed. *Dunham's Appeal*, 27 Conn. 193; *Hardy* v. *Merrill*, 56 N. H. 227; *Pittard* v. *Foster*, 12 Bradw. 132; *Clary* v. *Clary*, 3 Ired. 78; *Wheeler* v. *Anderson*, 3 Hagg. Eccl. 374; *Harrison* v. *Rowan*, 3 Washb. C. C. 585; *McClintock* v. *Card*, 32 Mo. 419; *Wagon* v. *Small*, 11 S. & R. 141; *Brooke* v. *Townsend*, 7 Gill, 10; *Wilkinson* v. *Pearson*, 23 Pa. 117; *Dorsey* v. *Warfield*, 7 Md. 65; *Beaubien* v. *Cicotte*, 12 Mich. 460; *Negro "Jerry"* v. *Townsend*, 9 Md. 145; *People* v. *Aleim*, 1 Edm. 13; *Fenwick* v. *Bell*, 1 C. & R. 312; 8 Abbott's Digest, 265, sec. 61; *Weir* v. *Fitzgerald*, 2 Bradf. 42.

As to the testimony of medical experts, see 1 Greenleaf on Evidence, sec. 440; *Rex* v. *Wright*, Russ. & Ry. 156; *Paige* v. *Haggard*, 5 Hill, 603; *Gilman* v. *Stafford*, 50 Vt. 723; *State* v. *Lautenschlager*, 22 Minn. 514; *Getchell* v. *Hill*, 21 id. 464; *Wright* v. *Hardy*, 22 Wis. 348; *Dickinson* v. *Fitchburg*, 13 Gray, 546; *Woodbury* v. *Obear*, 7 id. 467; *Regina* v. *McNaughton*, 47 Eng. C. L. 29; *Rex* v. *Serle*, 1 M. & R. 75; *Webb* v. *State*, 9 Texas App. 490.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Ellen Schneider and Edward H. McGlennon, to contest the will of Hugh McGlennon, deceased. The will was executed on the 6th day of September, 1879. McGlennon died on the 1st day of January, 1885, and on the 20th day of June, 1885, the will was admitted to probate in the county court of Lake county. The deceased left an estate of the probable value of $50,000, consisting mainly of real estate situated in Lake county and in the city of Chicago. He owed but few debts. The deceased left as his only surviving heirs, a widow, Ann McGlennon, and three children, Ellen Schneider, Edward H. McGlennon and Sarah F. Hagan. By the terms of the will, the testator, after directing the erection of a family vault and the payment of his debts, devised to his wife all of his personal property, and to his daughter Sarah F. Hagan, the remainder of his estate, except the sum of $100, which he devised to his daughter Ellen Schneider, and a like sum to his son, Edward H. McGlennon. On the 31st day of July, after the will was probated, this bill was filed, in which it is alleged that the said Hugh McGlennon, at the time of executing the will, was not of sound mind and memory, but on the contrary thereof, for a long time prior to and at the time of the said execution, was in a state of partial insanity, and affected with and subject to insane delusions concerning his wife and children. The bill contained other allegations, but it will not be necessary to refer to them here. The widow, the executor and Sarah F. Hagan were made defendants to the bill, and they put in an answer, in which they denied all the material allegations of the bill as to unsoundness of mind and partial insanity of the testator. An issue was formed, as is provided by the statute, which was tried before a jury, and a verdict was rendered in favor of the validity of the will, upon which the court rendered a judgment. To reverse the judg-

ment of the circuit court the complainants sued out this writ
of error.

Many witnesses were called, and testified on the trial as to
the soundness and unsoundness of the testator's mind at the
time the will was executed; but we have not the time, nor
would it serve any useful purpose, to go over the evidence of
each witness in detail. We have, however, examined all the
evidence introduced on the trial, and while it may be con-
ceded that the testator was eccentric, and entertained strange
notions upon some subjects, yet the great preponderance of
the evidence showed that he was a man of vigorous mind;
that he had capacity to transact all ordinary business, and
was fully competent to make a will. It was not claimed by
the contestants that the testator was insane, as that term is
ordinarily understood, but the claim was, that at the time the
will was executed Hugh McGlennon was laboring under an
insane delusion respecting his children, Ellen Schneider and
Edward H. McGlennon, and in consequence of such insane
delusion he was incompetent to make a will.

Certain declarations made by the testator after 1869, to the
effect that the son had threatened to kill the whole family;
that Schneider had tried to induce testator's wife to obtain a
divorce and secure large alimony; that he would break any
will the testator might make that did not suit him; that there
was a plot between Schneider, his wife and testator's son, to
kill him, and other declarations of a similar character, are
relied upon to establish an insane delusion. Whether the
testator had sufficient cause for making all or any of the
declarations attributed to him, we shall not stop to inquire.
There was some evidence introduced tending to prove that he
had ground for making the charges, or at least some of them,
that were made against the members of his family; but, inde-
pendent of this, the proponents of the will called over thirty
witnesses, some of them prominent business men of the city
of Chicago, who had known the testator for many years, busi-

ness men in the city of Lake Forrest, near where the testator lived for several years, and prominent men in Waukegan, where the testator had transacted business. These witnesses, with great unanimity, state that they had observed no change in the manner of the testator; that they noticed nothing in his conduct or conversation that indicated that he was of unsound mind; that they regarded him perfectly competent to transact ordinary business, and that he was mentally competent to dispose of his property by deed or will.

There may be, and doubtless are, cases where a person may be able to transact some business, and yet be incapable of making a will, on account of an insane delusion, which has destroyed the mind on a subject relating to that particular act. Shelford on Lunatics, p. 26, says: "Insane delusion consists in the belief of facts which no rational person would have believed. This delusion may sometimes exist on one or two particular subjects, though generally there are other concomitant circumstances, such as eccentricity, irritability, violence, suspicion, exaggeration, inconsistency, and other marks and symptoms which may tend to confirm the existence of delusion and to establish its insane character. The absence or presence of delusion, so understood, forms the true and only test or criterion of absent or present insanity. In short, delusion, in that sense of it, and insanity, seem to be almost, if not altogether, convertible terms."

In view of the law thus declared on the question under consideration, a bare reference to the evidence of the witnesses introduced in support of the will, is enough to show clearly that the testator was not laboring under an insane delusion, as that term is described by the author. The witnesses had known the testator for many years. They frequently met him and talked with him in regard to business and the various affairs of life, and in their conversation and constant intercourse with him no trace of a deranged mind on any subject is detected. Whatever doubt, therefore, may

have been raised in the minds of the jury by the evidence of the contestants of the will, in regard to the mental capacity of the testator to make a will, was overcome and removed by this evidence. A man may become prejudiced against some of his children, and that, too, without proper foundation; and because he may make unjust remarks against them,— remarks not warranted by the facts,—it does not follow that he has insane delusions, or that he is devoid of testamentary capacity. If such was the rule, but few wills would be able to stand the test where an unequal distribution of property has been made by a testator among children. A man has the right to dispose of his property by will in such manner as he may desire, and the fact that he may give more to one child than another, does not affect the validity of a will, or prove that the testator is incompetent to make a will.

It is also claimed that instruction No. 5, given in behalf of defendants, is erroneous. It is as follows:

"The court instructs the jury, that insanity or unsoundness of mind, within the meaning of the law in this case, is a disease of the brain, affecting the mind to such an extent as to destroy a man's capacity to attend to his ordinary business, or to know and understand the business he was engaged in when making a will. And unless the jury believe, from the evidence, that Hugh McGlennon's brain was diseased to such an extent that he did not have mind and memory sufficient to enable him to transact his ordinary business, such as renting his real estate, settling accounts, buying and selling property, and to know and understand the business he was engaged in at the time he made the will in dispute, you should find that said will is the will of said Hugh McGlennon."

Where a bill has been filed to impeach a will, on the ground that the testator was of unsound mind at the time the will was executed, the doctrine announced in the instruction has been approved in a number of cases decided by this court. In *Meeker* v. *Meeker*, 75 Ill. 262, it is said: "It is a rule of

law, that a person who is capable of transacting ordinary business is also capable of making a valid will. It is not required that he shall possess a higher capacity for that than for the transaction of the ordinary affairs of business. A man capable of buying and selling property, settling accounts, collecting and paying out money, or borrowing or loaning money, must usually be regarded as capable of making a valid disposition of his property by will." The same doctrine was announced in *Yoe* v. *McCord,* 74 Ill. 34, *Brown* v. *Riggin,* 94 id. 564, *Carpenter* v. *Calvert,* 83 id. 62, *Turk* v. *Newell,* 62 id. 196, and *Freeman* v. *Easley,* 117 id. 317. In the last case cited, after referring to *Meeker* v. *Meeker* with approval, it is said: "A test usually recognized is, the party must be capable of acting rationally in the ordinary affairs of life, so that he may comprehend what disposition he may wish to make of his property, and be able to select the subjects of his bounty. Nothing more is required, and so the authorities in this State uniformly hold." The rule announced by this court is in full accord with the most approved text writers on the subject. See 1 Redfield on Wills, 123, 124.

But it is said that the principal issue made by the contestants was, that the testator, at the time he executed the will, was laboring under insane delusions concerning the natural objects of his bounty, and, as applied to that issue, the instruction does not correctly state the law. In support of this position, we are referred to *American Bible Society* v. *Price,* 115 Ill. 631. Had there been no other instructions in any manner limiting the rule announced in this instruction, in regard to insane delusions, it may be that instruction No. 5 might have been misleading. But such was not the case. In the sixth instruction the jury were told, that if the testator had an insane delusion on the subject of his family, yet if they find, from the evidence, that at the time he made the will he had sufficient mind and memory to understand ordinary business, and knew and understood the business he was

engaged in when he made the will, they should find the will to be valid. Again, in contestants' instructions 2 and 3, the jury were so fully and clearly instructed in regard to insane delusions, that they could not have been misled by the instruction complained of.

No. 3 is also claimed to be erroneous. The instruction, in substance, declares that the owner of property who has capacity to attend to ordinary business, has the right to dispose of it by deed or will, as he may choose, and that it requires no greater mental capacity to make a valid will than to make a valid deed; that an owner of property has a right to leave his property to his children, or other relatives, in unequal proportions, and such disposition is valid, whether it be reasonable or unreasonable, just or unjust; and the reasonableness or justice or propriety of the will are not questions for the jury to pass upon. The law is well settled that any person competent to make a will may dispose of his property in such manner, not inconsistent with the law of the land, as his judgment may dictate. He is under no legal obligation to divide it equally among his children, but may cut off one or all, and devise to a stranger; and, as a general rule, the justice or propriety of the will is not a question for the jury to pass upon. This, as we understand it, is the substance of the charge complained of. There are authorities which hold that apparent inequality or unreasonableness in a testamentary disposition of property may be considered as a circumstance on the question of testamentary capacity,—for example, *Lamb* v. *Lamb,* 105 Ind. 457; *Denison's Appeal,* 39 Conn. 405; *Bilner* v. *Bilner,* 65 Pa. St. 362; *Kevill* v. *Kevill,* 2 Bush, 614; *Kimball* v. *Cuddy,* 117 Ill. 217. But we do not understand that the instruction conflicts with this rule. Had the jury been told that injustice or inequality of disposition was not a circumstance to be considered, a different question might arise; but such was not the instruction, as we understand it.

25—121 Ill.

The fourth instruction is objected to. The substance of this charge is, that eccentricities or peculiarities will not necessarily render a man incapable of making a will. There was evidence before the jury that the testator was eccentric and peculiar, and if such traits of character did not disqualify, we see no good reason why the jury might not be so instructed. An eccentric man or a peculiar man is not disqualified from selling or disposing of his property by devise. If such was the case, many people might be deprived of that right, as but few men can be found who are not in some respects peculiar.

After several of the witnesses had testified in regard to the condition of the testator's mind, his capacity for transacting business, from their acquaintance and personal knowledge of him, they were then asked the following question: "Had he the mental capacity to dispose of his property by will or deed?" The question was objected to, but the objection was overruled, and the witness allowed to answer. The decision of the court on the question is relied upon as error. The authorities are not uniform on this question, but we think the weight of authority is against the ruling of the court. *Gibson* v. *Gibson*, 9 Yerg. (Tenn.) 332; *White* v. *Baily*, 10 Mich. 155; *Kempry* v. *McGinnis*, 21 id. 123; *Farrel* v. *Brennan*, 32 Mo. 328; *Fairchild* v. *Bascom*, 35 Vt. 398. The witness had the right to state any fact he knew in relation to the capacity of the testator to transact business, and all he knew in regard to the vigor or strength of his mental powers. But whether he had the mental capacity to dispose of his property by will or deed, was a question for the jury to determine from the facts proven before them. But while the court erred in allowing the question to be answered, it was not an error of sufficient magnitude to reverse the judgment. The witness had stated all the facts upon which he based his opinion, to the jury, and his mere opinion could carry with it no additional weight. We do not think, therefore, that complainants were in the least injured by the evidence.

Dr. Hays, a medical expert, having been called as a witness by the defendants, testified that he had heard all the evidence introduced by the contestants. The witness was then asked the following question: "Having heard that evidence on the part of the contestants, state whether or not, in your opinion, from a medical standpoint, from that evidence, Hugh McGlennon was of sound or unsound mind on September 6, 1879." The question was objected to, the objection overruled, and the complainants excepted. We think the evidence was admissible. Greenleaf on Evidence, (vol. 1, sec. 440,) after stating that the opinions of witness are, in general, not evidence, says: "On questions of science, skill or trade, or others of the like kind, persons of skill, sometimes called experts, may not only testify to facts, but are permitted to give their opinions in evidence. Thus, the opinions of medical men are constantly admitted as to the cause of disease or of death, or the consequence of wounds, and as to the sane or insane state of a person's mind, as collected from a number of circumstances, and as to other subjects of professional skill; and such opinions are admissible in evidence, though the witness founds them, not on his own personal observation, but on the case itself, as proved by other witnesses on the trial." *Gilman* v. *Town of Stafford,* 50 Vt. 723 ; *Webb* v. *State,* 9 Texas Ct. of App. 490 ; *Woodbury* v. *Obear,* 7 Gray, 467.

A hypothetical question was also asked the witness, which is claimed to be erroneous. But without entering upon a discussion of the question, we think it complied substantially with the rules of evidence which govern the subject. Indeed, after a careful examination of the entire record, we find no substantial error in it, and the decree will be affirmed.

*Decree affirmed.*