## Joseph Felver v. Samuel B. Judd.

1. INSTRUCTIONS—*Should Not Ignore the Evidence.*—An instruction which ignores proof tending to establish a material point in the case, is erroneous.

2. NEW TRIALS—*Newly Discovered Evidence—Diligence.*—A party who is taken by surprise on the trial of a case by his adversary's testimony, and unable then to meet it without discontinuing the trial, but afterward discovers evidence to do so, can not be charged with a want of diligence on a motion for a new trial, on the ground of newly discovered evidence.

Assumpsit.—Common counts. Trial in the Circuit Court of Kane County; the Hon. HENRY B. WILLIS, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the December term, 1898. Reversed and remanded. Opinion filed April 11, 1899.

A. J. HOPKINS, F. H. THATCHER and F. A. DOLPH, attorneys for appellant.

ALDRICH, WINSLOW & WORCESTER, attorneys for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

On December 1, 1890, Joseph Felver leased to Samuel B.

Judd a farm of about 250 acres, near Batavia, for a term of three years. The lease was in writing and the rent was payable in shares. At the expiration of that lease an arrangement was made that the tenant should hold over for three more years. No new lease was drawn nor was any change made in the contract. Judd did hold over for two of those years. On December 1, 1895, Felver gave Judd a new lease in writing for one year at a cash rent. There were many and complicated dealings between the parties arising from their joint ownership of the stock and crops upon the farm during the first five years. After the relation of landlord and tenant terminated Judd brought this suit against Felver, claiming a balance due him from the dealings between them. Felver filed the general issue and a plea of set-off, claiming a balance due him from his tenant. At the trial there were many conflicting claims as to the true state of the account between the parties. The jury gave Judd a verdict for $458.20. Judgment was rendered upon the verdict and Felver appeals.

The first lease contained the following clause: "Said Judd is to leave as much plowing done on the place as is now done, being about fifty acres. Straw raised on the place the last year is to be left on the place." Defendant claimed that the holding over for two years after the three years named in the written lease was upon the terms of said written lease, and therefore at the end of the fifth year, the tenant was bound to leave plowing and straw as in said written lease specified. This the tenant did not do, but sold off the straw upon the place at the end of said fifth year. There was evidence tending to show that this matter was afterward discussed between the parties, and the dispute settled as to the straw item, by an agreement between them that the tenant should pay his landlord $96.25 for the straw so sold by the tenant at the end of the fifth year. The second instruction given for plaintiff told the jury that if the leasing for the two years was not a holding over under the old lease, but a new arrangement, and if the plowing and straw were not a part of said contract for the two years, then as to the plowing and straw they should find for plaintiff. This

not only was not justified by the evidence as to the holding over, but also ignored the proof tending to show an agreement plaintiff should pay $96.25, in settlement of the dispute upon the straw item. It was therefore erroneous. It is argued the jury may have allowed the $96.25. It is also true they may have rejected it, and because of this instruction. There were many items in evidence upon each side, and it is impossible to say which the jury allowed.

Defendant's motion for a new trial was based in part upon newly discovered evidence shown by affidavits. Under the contract in force the first five years, plaintiff and defendant owned jointly the stock on the farm, and defendant was entitled to one-half the products of the farm and stock. Plaintiff kept the only account of what he sold from the farm. At the trial defendant sought to prove plaintiff had sold stock from the farm for which he had never accounted and with which he had never charged himself. Among other items defendant proved by the witness Rowe and others, that on February 12, 1895 (during said five years), Rowe bought of Judd, four cows off the farm, and gave him in payment therefor a check of that date for $112.50. The check was in evidence. Plaintiff had not entered the said sale upon the account nor charged himself therewith, and if it was a sale of stock owned jointly, defendant was entitled to a credit for one-half said sum. On rebuttal plaintiff testified said cows were not from the joint stock, but that he had bought said four cows the day, or day but one before this, from one Carlisle, of St. Charles, and brought them to the farm the day he sold them to Rowe. The affidavits, on motion for a new trial, showed that Carlisle had been for years in the business of buying cows in other States and bringing them to Kane county in carload lots and there selling them; that his books contained an exact account of the number of cows in each car, and to whom sold; that he sold no cows to plaintiff in February, 1895; that his last sale to plaintiff before February, 1895, was about April 23, 1894, and was three cows, for which plaintiff paid him $120; that his first sale to plaintiff after Feb-

ruary, 1895, was shortly after June 20, 1895, and was four cows, for which plaintiff paid him $142.50.

The affidavit of Carlisle seems to demonstrate plaintiff was mistaken in testifying he bought the four cows in question of Carlisle in February, 1895. With plaintiff's evidence thus overturned, defendant's right to half the value of the cows sold Rowe is apparently clear. But it is said the affidavits do not show defendant used diligence. They do show defendant had no reason to expect plaintiff would so testify; that in previous attempts at settlement this check had been frequently presented to plaintiff and he had never claimed he bought those cows of Carlisle, and that defendant never heard that claim until plaintiff so testified on rebuttal. It is true the affidavits do not show where Carlisle was on the day of the trial, but only that defendant could not then get him. Carlisle lived at St. Charles, some distance from the county seat. There is nothing to show he was in any way connected with this trial. Defendant had no means of knowing at that moment whether plaintiff's testimony, that he bought of Carlisle, was true or false. He could not be expected to hunt for Carlisle and ascertain the facts just at the close of the trial. Defendant was evidently taken by surprise by the testimony, and could not then meet it. But if Carlisle had been in the court room at that moment, his affidavit shows it required a careful examination of his books to produce the demonstration that he did not make a sale at that time to Judd, and that his books account for every cow he shipped into Kane county, and show to whom he sold it, and show the same number of cows bought and sold, and thereby show that no sale had been omitted from his books. This examination of the books obviously could not have been made during that trial after plaintiff testified in rebuttal. A new trial should have been awarded. The judgment is reversed and the cause remanded.