Thomas Vincent v. People of the State of Illinois, ex rel.

1. NEW TRIALS—*Proper Diligence.*—A party who is taken by surprise on the trial of a case by the shifting of his adversary's ground, and is unable then to meet it without discontinuing the trial, but can obtain evidence to do so upon another trial, can not be charged with want of diligence on a motion for a new trial on the ground of newly-discovered evidence.

Bastardy Proceedings.—Error to the County Court of La Salle County; the Hon. WILLIAM H. HINEBAUGH, Judge presiding. Heard in this court at the April term, 1903. Reversed and remanded. Opinion filed June 8, 1903.

BARNES & MAGOON, attorneys for plaintiff in error; WILLIAM M. SCANLAN of counsel.

CHARLES S. CULLEN, state's attorney, and CHARLES W. HELMIG, attorneys for defendant in error.

MR. JUSTICE DIBELL delivered the opinion of the court.

This is a bastardy proceeding wherein Thomas Vincent was, by the verdict of a jury and the judgment of the court below, found to be the father of a bastard child of Elizabeth, or Lizzie, Stuber, and ordered to pay the statutory sums for its support. Defendant has sued out this writ of error to reverse said judgment.

Defendant was married and lived with his family in a small house in Peru. At the time in question he worked for the Peru Plow & Wheel Company, and was accustomed to be at work at seven o'clock in the morning. His wife gave birth to a second child of their marriage, January 2,

1902. Just before Christmas Lizzie came there from her home in Bureau county to do the housework during Mrs. Vincent's confinement. This arrangement was brought about through Lizzie's married sister who lived the second door from defendant. Lizzie testified at the trial that on January 16, 1902, defendant did not go to work in the morning, but claimed to be sick; that Mrs. Vincent had been out of bed two or three days; that some time during the forenoon Mrs. Vincent went out of the back door and was gone perhaps an hour; that she, Lizzie, was working in the front room, in which was the bed where Vincent slept during his wife's confinement; that Vincent seized her, threw her upon the bed and had carnal intercourse with her against her will and in spite of her utmost struggles; that he then left the house and she did not see him again; that she went on with her work; that toward night Mrs. Vincent paid her off and she went to her sister's house and stayed a day or two and then went home; that she did not complain or state the facts to any one till her mother discovered her condition in August following; that she had never before or since had intercourse with any man, and that Vincent was the father of her child, born October 27, 1902. Defendant's house came almost to the sidewalk and was about three feet above it. The front room had two windows looking out on the sidewalk. Lizzie seemed to testify both ways as to whether the ordinary window curtains were up or down, but she testified there were lace curtains at the windows which prevented any one seeing in. Several witnesses testified there were no lace curtains at these windows. It was but a few feet from this house to the next, and other houses were directly across the street and close by. Vincent testified that he never had intercourse with the girl, and that he left home for his work about 6:30 on the morning of the 16th, and did not return till about six o'clock at night. The bookkeeper of the plow company testified defendant worked there ten hours on January 16th, but he only spoke from what the books and time cards showed. Defendant sought to show

the same fact by certain books and memoranda kept by the plow company, but was unable to lay a proper foundation. But defendant also testified that Lizzie ceased working at his place on January 14th, instead of January 16th, and he testified he was at work all that day. He proved by another witness that Lizzie left on the 14th. There was no preliminary examination before the justice who issued the warrant for defendant's arrest. After defendant was committed he sued out a writ of habeas corpus, and had a hearing at which Lizzie was a witness. He proved by several witnesses at this trial that she there testified that she left defendant's house and quit work there on January 14th.

On a motion for a new trial defendant filed affidavits showing that he was induced to waive the preliminary examination by persons acting in the interest of the complaining witness; that upon his afterward engaging counsel the habeas corpus was obtained in order to ascertain when Lizzie claimed the intercourse took place; that at that hearing Lizzie testified that she did not know when the intercourse took place, but that she left his house on January 14th, and did not enter it again; that he prepared for the trial on the assumption she would testify the intercourse took place some time between the date when she came to his house, before Christmas, 1901, and the date when she left, on January 14th; that he was taken by surprise by her testimony at this trial that she left on January 16th, and that the intercourse took place on that day; that he then had subpœnas and subpœnas *duces tecum* issued for witnesses, in an effort to show by the books of his employer that he was at work all that day, but the witnesses were served at Peru late at night and had to appear at Ottawa next morning, and were able to make but a partial search for the data he desired, and he was unable to lay the proper foundation. He filed the affidavits of two witnesses who were at his house about 7:30 the morning of the 16th, and who stated he was not there, and one of whom was there again toward night, and both of whom stated Lizzie was not there and was not working there that day. He showed the discovery of other witnesses by whom he

could prove that Lizzie left on the 14th, and that there were no lace curtains at the windows.

The story told by Miss Stuber has elements of improbability. Her testimony showed that defendant's wife had recovered, was about the house, was up for breakfast that morning; that she put a shawl over her head and went out of the back door, leaving her two children in Lizzie's care. There is nothing to show her husband had any reason to suppose but she might come back any minute; yet it is claimed he took that opportunity to make a criminal assault upon this girl, in the front room, close to the street and sidewalk, in a populous part of the city, with another house a few feet away. There is a preponderance of proof against the complaining witness as to the presence of lace curtains at the windows, and also as to the date when she left. No doubt it is immaterial on what particular day defendant had intercourse with her, if he did at all; but when she had fixed a date under oath when she left his house, and had testified this act was before that date, a change by her after this trial was begun, by which she placed the act at a later date, became very material to the defense. The affidavits filed in support of the motion for a new trial indicate that at another trial defendant will be able to convince the jury that this intercourse did not take place on January 16th, and that there were no lace curtains at the windows; and that he may be able to show by his employer's books of original entry, as well as by his own testimony, that he was at work all day of the 16th. Defendant could not well have asked for a continuance in the middle of the trial. He could not then know what he could show by others as to the whereabouts of himself and Lizzie on the 16th. He made what efforts he could to get documentary evidence, but failed. We think what we said of diligence under like circumstances in Felver v. Judd, 81 Ill. App. 529, is applicable here. According to all the proof in this record, the prosecuting witness shifted her ground at the trial, to the serious disadvantage of defendant, and we conclude the ends of justice require a new trial.

The judgment is reversed and the cause remanded.