WILLIAM L. BAILEY *et al.* Plaintiffs in Error, *vs.* E. L. BEALL *et al.* Defendants in Error.

*Opinion filed October 25, 1911—Rehearing denied Dec. 7, 1911.*

1. TRIAL—*court should allow great latitude in cross-examining witness who has been an attorney in the case.* While an attorney in a case is not disqualified by the law from testifying as a witness, particularly where he testifies that he has withdrawn from the case, yet the court should permit great latitude in the cross-examination of such witness in order to show his interest in the suit, and it is error to unduly restrict such cross-examination.

2. WILLS—*witness cannot be asked whether testator had sufficient mental capacity to make a will.* It is not proper in a will contest case to allow witnesses to answer the question whether, from their acquaintance and conversations with the testator and their knowledge and observation of him, they believed he had sufficient mental capacity, at the time he signed the instrument, to engage in making a last will and testament and to understand the nature and effect of the act.

3. EVIDENCE—*when partner of one of the executors is disqualified.* In a suit by heirs to set aside a will, a witness who is a partner in the banking business with one of the executors, and who testifies that he supposes the partnership agreement applies to fees received by his partner in the administration of the estate and that he has a financial interest in the result of the suit, is disqualified, under section 2 of the Evidence act, from testifying in his own behalf against the contestants.

4. SAME—*in civil case the conviction of a witness need not be proved by the record.* In a civil case the fact that a witness has been convicted of a crime may be shown for the purpose of affecting his credibility, and may be proved, like any fact not of record, by the witness himself or any other witness cognizant of the conviction or by any other competent evidence, and it is not necessary, as in a criminal case, to prove the conviction by the record thereof.

5. INSTRUCTIONS—*when instructions in a will contest case are misleading.* Instructions for the proponents in a will contest case are misleading and should not be given, where, by reason of mentioning the names of the subscribing witnesses and the attorney who drew the will and reciting the circumstances under which the will was prepared and attested, they are calculated to impress the jury with the belief that the testimony of the named persons should be given greater weight than the testimony of the other witness.

WRIT OF ERROR to the Circuit Court of Moultrie county; the Hon. W. G. COCHRAN, Judge, presiding.

HERRICK & HERRICK, F. M. HARBAUGH, F. J. THOMPSON, and E. J. MILLER, for plaintiffs in error.

E. E. WRIGHT, JOHN E. JENNINGS, and LEFORGEE, VAIL & MILLER, for defendants in error.

RAY D. MEEKER, guardian *ad litem.*

Per CURIAM: This was a bill filed by plaintiffs in error (hereafter called contestants) in the circuit court of Moultrie county to set aside the will of Stanton Adkins, deceased. The bill in apt language charged that Stanton Adkins did not possess mental capacity to make a valid will. An issue was submitted to the jury whether the writing offered in evidence was the last will and testament of Stanton Adkins, deceased. The jury returned a verdict finding that it was, and the court entered a decree in accordance with the verdict and adjudged costs against the contestants, who have sued out this writ of error to review that decree.

At the time of making his will Adkins was between seventy-nine and eighty years of age. The will was signed on the 18th day of September, 1909, and Adkins died on December 29, 1909. His wife died about one and one-half years before he died. He left no children or descendants of children but left a large number of collateral heirs, among them one full brother, one half-brother, two half-sisters, and a large number of nephews and nieces and other remote relatives. He was the owner of personal and real property of the value of about $300,000. The will set aside $2000, the income from which was to be used by the executors as long as they lived and by trustees to be appointed after their death, for the keeping up of testator's family burying lot and mausoleum. Fifty thousand dollars was directed to be used for the building of a hospital in the

village of Lovington, Illinois, upon condition that the people of the county of Moultrie should raise and expend a like sum in building and equipping said hospital. In case the people of Moultrie county failed to raise the sum of $50,000, or secure pledges for it, within one year after admitting the will to probate, the $50,000 authorized to be paid out of the testator's estate for building said hospital was to be divided equally between his brother, George W. Adkins, if living, and his nephew William S. Adkins. A bequest of $8000 was made to Emery Boggs, who was a son of testator's deceased wife's sister and who lived with the testator from the time he was a small boy until he reached manhood. A brother-in-law of testator was given $500, and George W. Adkins, the testator's brother, and William S. Adkins, a nephew, if living, were made residuary legatees. E. L. Beall, James Bicknell and L. G. Hostetler were named as executors, and were given authority to convert all of the testator's real and personal property, except notes, bonds and mortgages, into cash as soon as practicable. They were authorized to sell his farm of about 640 acres upon such terms and conditions as to them appeared to be to the best interest of the beneficiaries of the will. His bonds, notes and mortgages were to be divided among the residuary legatees. At the time the will was signed Stanton Adkins was in a feeble physical condition from sickness and old age. A large number of witnesses were called by the respective parties and testified upon the subject of the mental capacity of the testator. Their testimony covers more than 1500 pages of the record and was highly conflicting. As the decree must be reversed for errors in the admission and rejection of testimony and giving instructions on behalf of proponents, we will not undertake to give the substance of the testimony. The evidence on behalf of the contestants tended to show that Stanton Adkins did not possess testamentary capacity to make a valid will, while that given on behalf of proponents tended to

show that he did possess testamentary capacity. We express no opinion as to the weight of the testimony, but the evidence of the respective parties was of such character as to require correct rulings in admitting and rejecting evidence and giving and refusing instructions.

Numerous objections are made to the rulings of the court in the admission and rejection of testimony.

The testator made his first will July 1, 1909. He had sent for and talked with the attorney who drew it, before it was prepared and signed. One of the beneficiaries died soon after, and the testator sent for the attorney, who prepared another will, which is the one here in controversy. Some three or more interviews occurred between the testator and his attorney concerning the disposition of the testator's estate by will. The attorney who drew the will had represented the testator in litigation prior to drawing the instrument. He was an important witness for proponents as to Stanton Adkins' testamentary capacity. He was also employed by the executors, upon the probate of the will, to act as their counsel in the management and settlement of the estate. The record shows this suit was begun by filing the bill February 4, 1910, to the March term, 1910, of the Moultrie county circuit court. The attorney appeared as counsel for the proponents, with LeForgee, Vail & Miller, also employed by proponents, until the 10th day of October, 1910, and took an active part in preparing the case for trial. October 10, 1910, the record shows he withdrew, and Eden Jennings, and E. E. Wright, a brother-in-law of the attorney and who officed with him, were entered as solicitors for proponents. The case was tried in December, 1910. The attorney, on cross-examination, testified he appeared for the executors in this suit and was interested in the case until it was decided between himself and associate counsel that he should withdraw as counsel and appear as a witness. The witness testified he was not sure when his brother-in-law was employed, but thought it was after

he withdrew from the case; that he did not think he had
talked with other counsel in the case after he withdrew,
except to answer questions as to what his testimony would
be.   He testified Wright would tell him when he was going
to be absent from the office making investigations in pre-
paring for the trial, and when he returned witness would
inquire of him the results.   With Wright he went over the
list of jurors constituting the panel for the term at which
the case was tried, for the purpose of discussing the char-
acter of the men, expressing his opinion about them and
giving proponents the benefit of his knowledge.   Witness
testified he still represented the executors in probate mat-
ters and other litigation; that his fees had not been paid
or agreed upon; that there was no arrangement about fees
in this case between himself and Wright, and that he did
not expect a larger fee if the will was sustained than if not
sustained.   The witness was asked if he did not then rep-
resent the executors in this suit, and if he did not know or
have good reason to believe, immediately upon the bill be-
ing filed, that he would be a witness in the case.   Objec-
tions by the proponents were sustained to those questions.
The witness testified he did not think he had his withdrawal
from the case made a matter of record, but that the other
counsel in the case might have done so.   Witness was asked
if at the time he withdrew, anyone's name was substituted
as counsel for proponents and if he did not have Wright's
name so entered.   Objections to these questions were also
sustained, and contestants insist the court erred in unduly
restricting the cross-examination of the witness.   We agree
with this contention.   While the attorney in a case is not
disqualified by law from testifying as a witness in behalf
of his own client, the propriety of his doing so and the
effect of his testimony have been passed upon by this court
in a number of cases.   (*Wetzel* v. *Firebaugh, ante,* p. 190;
*Grindle* v. *Grindle,* 240 Ill. 143; *Bishop* v. *Hilliard,* 227 id.
382; *Wilkinson* v. *People,* 226 id. 135.)   It is true, the

witness testified he had withdrawn from the case before testifying; but he had been actively engaged in the case, in preparing it for trial, until about two months before he testified, and he still continued to act as counsel for the executors in other litigation and in the discharge of their duties as executors under the will. His testimony was of the utmost importance upon the material and controverted question in the case, and instead of unduly restricting the cross-examination, as the court did, it should have allowed the widest latitude, within reasonable bounds. Notwithstanding the witness' previous answers, counsel for the contestants had a right to have the questions answered to which the court sustained objections, and the court erred in not so ruling.

Several witnesses for proponents who were acquainted with Stanton Adkins were asked, and over objections permitted to answer, whether, from their acquaintance and conversations with and knowledge and observation of him, they believed he had sufficient mental capacity, at the time he signed the instrument, to engage in making a last will and testament and understand the nature and effect of the act. The questions were, in effect, an inquiry whether the witnesses thought Stanton Adkins had sufficient mental capacity to make a will. In *Baker* v. *Baker,* 202 Ill. 595, it was held improper to permit a witness to state whether, in his opinion, the testator had sufficient mental capacity to understandingly execute a will. In *Schneider* v. *Manning,* 121 Ill. 376, it was said: "After several of the witnesses had testified in regard to the condition of the testator's mind, his capacity for transacting business, from their acquaintance and personal knowledge of him, they were then asked the following question: 'Had he the mental capacity to dispose of his property by will or deed?' The question was objected to, but the objection was overruled and the witness allowed to answer. The decision of the court on the question is relied upon as error. The authorities are

not uniform on this question, but we think the weight of authority is against the ruling of the court. (*Gibson* v. *Gibson,* 9 Yerg. (Tenn.) 332; *White* v. *Baily,* 10 Mich. 155; *Kempry* v. *McGinnis,* 21 id. 123; *Farrel* v. *Brennan,* 32 Mo. 328; *Fairchild* v. *Bascom,* 35 Vt. 398.) The witness had the right to state any fact he knew in relation to the capacity of the testator to transact business and all he knew in regard to the vigor or strength of his mental powers, but whether he had the mental capacity to dispose of his property by will or deed was a question for the jury to determine from the facts proven before them." These cases were cited with approval in *Garrus* v. *Davis,* 234 Ill. 326, and section 392 of Page on Wills, in which the author discusses the competency of asking a witness whether in his judgment the testator was competent to make a will, was quoted from, as follows: "This form finds justification in the language used in many cases where the precise point has not been presented for consideration, but it is inherently vicious, as it presupposes that the witness knows what degree of capacity the law requires in order that testator may make a valid will, and, in addition to the opinion of the witness as to testator's sanity, such a question calls for the opinion of the witness as to the law. Accordingly the courts which have considered this exact point have held that such question is improper and should not be allowed." The latest utterance of this court upon this question is *Wetzel* v. *Firebaugh, supra,* where it was said: "But it was not proper for witnesses to put themselves in the place of the jury. Questions put to witnesses whether the testatrix was able to understand the business in which she was engaged when she made this will or able understandingly to execute it, simply called for conclusions of the witnesses as to testamentary capacity, and amounted to an attempt to put the witnesses in the place of the jury and allow them to determine the very question which the jury had been sworn to try. (*Schneider* v. *Manning,* 121 Ill. 376; *Pyle*

v. *Pyle,* 158 id. 289; *Baker* v. *Baker,* 202 id. 595.) It was proper for the parties to furnish the jury with all the facts relating to the extent of the estate and the number and situation of the relatives as well as with the opinions of witnesses touching the sanity and mental capacity of the testatrix, but the court was right in sustaining the objections to questions calling for opinions on the issue submitted to the jury. Both parties interrogated their witnesses on the question whether the testatrix had sufficient mental capacity to understand the business she was engaged in, of making a will, and this was improper. The law fixes the degree of capacity required to make a valid will, and it is the proper function of the court to advise the jury as to the rules of law, and it is not proper for witnesses, whether experts or not, to give opinions whether a person was capable of executing a valid will.—*Garrus* v. *Davis,* 234 Ill. 326." The foregoing authorities sustain the assignment of error that the court erred in permitting to be answered questions as to the witnesses' opinions of the capacity of Stanton Adkins to make a will.

S. P. Drake testified on behalf of proponents. He is a partner of Hostetler, one of the executors, in the banking business. On cross-examination he testified that he supposed their partnership agreement applied to the fees received in the administration of this estate and that he had a financial interest in the result of the suit. A motion was thereupon made by counsel for contestants that Drake's testimony be excluded, on the ground that he was not a competent witness. The court overruled the motion, and this ruling is assigned as error. Section 2 of the chapter on Evidence and Depositions disqualifies not only the parties to the suit but persons directly interested in the result thereof from testifying in their own behalf when the adverse party sues or defends as heir. Here the contestants were suing as heirs, and Drake, according to his evidence, was directly interested in the result of the suit. If the will was

sustained he would share the fees his partner received as executor, and in an estate worth $300,000 this would be no inconsiderable sum. If the will was defeated he would recover nothing. We think the court erred in overruling the motion to exclude Drake's testimony.

Jonathan Smith testified for contestants. On cross-examination he was asked and required to answer, over objections, whether he was indicted in Effingham county, under the name of John Smith, for larceny and convicted at the October term of court, 1901. It is insisted this could only properly be proved by the record and that the court erred in overruling contestants' objections. Counsel have confused the rule in criminal cases with the rule in civil cases. Paragraph 426 of the Criminal Code (Hurd's Stat. 1909, p. 825,) permits the conviction of a witness to be shown for the purpose of affecting his credibility, and we have held that under that statute such conviction can only be proven by the record. Section 1 of the chapter on Evidence and Depositions in civil cases removes the disqualification as a witness that formerly attached to persons by reason of their conviction of a crime, but provides that such conviction may be shown for the purpose of affecting the credibility of the witness, "and the fact of such conviction may be proven like any fact not of record, either by the witness himself (who shall be compelled to testify thereto) or by any other witness cognizant of such conviction, as impeaching testimony, or by any other competent evidence." This being a civil case, the court did not err in overruling the objections.

In some other instances, less important in character, errors were committed by the court in ruling on the admission of evidence, but we regard it as unnecessary to point out further errors in this line.

The seventh instruction should have been refused or modified. Its vice is not so much in that it states an incorrect proposition of substantive law as that it gives un-

due weight and importance to the testimony of the attesting witnesses to the will. By mentioning the subscribing witnesses by name and reciting at length the circumstances of their attesting the will, believing at the time the testator was of sound mind, the jury would very reasonably infer that especial weight and importance should be given their testimony.

The eighth instruction is subject to the same objection, and to the further objection that in addition to calling particular attention to the testimony of the subscribing witnesses to the will by name it also particularly emphasizes the testimony of the attorney who drew the will, mentioning him by name, and his testimony to the effect that he prepared the will at the request of and according to the directions given him by Stanton Adkins. The weight and value to be given to the testimony of the respective witnesses in a case is a question for the jury to determine, but the jury might well infer from the seventh and eighth instructions that the testimony of the witnesses whose names were mentioned in them was entitled to greater weight than the testimony of other witnesses not named in the instructions.

The fifteenth instruction covers more than a printed page of the abstract and is more in the nature of an argument than an instruction. The propositions of law contained in it were embraced in other instructions given on behalf of proponents, and the court should have refused that instruction.

Objections are made to other instructions given on behalf of proponents. Some of them are not technically accurate, but their defects were not of a character that would mislead the jury.

For the errors indicated the decree is reversed and the cause remanded.     *Reversed and remanded.*