RUTH TABOR, as Administratrix of the Estate of FRANK J. BILLINGS, Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 27850.)

Court of Claims, May 22, 1946.

*Kenneth S. MacAffer* and *Joseph J. Mailloux* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Edward R. Murphy* of counsel), for defendant.

RYAN, J. Claimant, as administratrix, sues the State of New York to recover damages (a) for personal injuries inflicted on Frank J. Billings and for his conscious pain and suffering therefrom and (b) for his wrongful death resulting from such personal injuries. Billings was a patient at the Hudson River State Hospital, which institution was being paid for his board and care. He was seventy-two years of age and his case was diagnosed as senile psychosis, confusion, with arterial sclerotic changes. In medical opinion his condition was incurable and claimant's counsel concedes that Billings would not have recovered from it. Physically Billings was old and infirm and his vision was impaired to an extent that he was practically blind.

Billings was an inmate of Ward 41 to which were assigned 103 patients, all of them old, infirm and confused. During the day the dormitory of Ward 41 was emptied and these patients were confined in the day room of the ward until bedtime. The dimensions of the day room were sixty by fifty-two feet and it was partitioned into six alcoves. It was considered good treatment to keep these patients ambulatory. Some of them were constantly in motion, some sat on benches and chairs and some would lie on the floor.

After 5:30 P.M. and until 6:30 o'clock the next morning there was but one attendant on duty in Ward 41. On May 27, 1943, at about 7:00 o'clock in the evening Frank J. Billings was walk-

ing about when he was pushed to the floor by another patient named Alexander Smith. Smith had been a patient in the institution since October, 1907. His case record contained several entries describing him at various times as having "disturbed the patients around him", as "being noisy and assaultive", as "assaultive" and as "uncooperative * * * gets into trouble with other patients in minor affairs but in the main gets along well". The hospital report of the injury to Billings, which is dated June 1, 1943, recited that Smith "has been known from time to time as in trouble with other patients". There is, however, no proof in the record of the trial before us that Smith had ever actually assaulted another patient.

The attendant Barnett, who was on duty at the time, testified that he was leaning against a table not more than six feet away and saw Smith, who was sitting on a bench, jump up as Billings was passing and give him a quick shove. The attendant further testified that he assisted Billings to his feet and to a bench three or four feet away and later helped him into bed and that when he went off duty at midnight, Billings was asleep. The next morning it was discovered that Billings had a fractured hip. He was removed to a surgical ward where he was immobilized in bed and traction applied. He contracted hypostatic pneumonia from which he died June 10, 1943.

While there is no proof that Smith was a greatly disturbed, violent or dangerous patient he was known to the hospital authorities as a trouble maker. In the exercise of reasonable care he should have been segregated and not allowed to mingle with the hundred-odd aged and infirm patients in the crowded day room. Moreover, one attendant could hardly be expected to give proper supervision to that large number. Under all the circumstances we find that the State of New York, through its officers and employees, failed to exercise reasonable care in the control and custody of its ward. There must be a recovery herein. (*Martindale* v. *State of New York,* 269 N. Y. 554; *Curley* v. *State of New York,* 148 Misc. 336, affd. *sub nom. Luke* v. *State of New York,* 253 App. Div. 783.)

However, inasmuch as the decedent's mental condition was incurable the persons for whom this action is brought have sustained no pecuniary loss and in the present state of the law there can be no recovery of damages under section 130 of the Decedent Estate Law, except the funeral expenses. (*Grasso* v. *State of New York,* 289 N. Y. 552; *Dimitroff* v. *State of New York,* 171 Misc. 635.) The funeral expenses amounted to $520 and an award in that amount is directed together with interest thereon from the date of decedent's death.

The claimant is also entitled to recover for the conscious pain and suffering of the decedent. (Decedent Estate Law, §§ 119, 120; *Johnsen* v. *State of New York,* 176 Misc. 347.) From May 28th until his death decedent was given hypodermic injections of morphine sulphate to alleviate his pain and part of the time he was in a semistuporous condition. We award the amount of $2,000 upon this cause of action. However, the claimant is not entitled to interest upon this sum. (*Helman* v. *Markoff,* 255 App. Div. 991.)

Decision and judgment accordingly.