Louis Bezark, Appellee, v. Kostner Manor, Inc., a Corporation, Appellant.

**Gen. No. 47,941.**

First District, First Division.

February 15, 1961.

Rehearing denied March 6, 1961.

Lord, Bissell & Brook, of Chicago (Newell S. Boardman, Richard E. Mueller and Bruce J. McWhirter, of counsel) for appellant.

Louis G. Davidson and Perry M. Berke, of Chicago, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a personal injury action against Kostner Manor, Inc., a nursing home for aged people, by Louis Bezark, one of its patients. It is based upon the alleged negligence of the home in failing to exercise ordinary care to protect him from assault and injury by a fellow patient. A jury trial resulted in an $18,500 verdict for plaintiff. Post-trial motions of defendant were overruled. Judgment was entered on the verdict, and defendant appeals.

On May 29, 1958, plaintiff Bezark, then 73 years old, was a paying guest at the nursing home, which occupied a 3-story building and accommodated 119 patients, of whom 30 were confined to bed. The patients were free to move about the premises as they wished and Bezark, while on his way to the reception room to watch a television program, was injured in a hallway. He required surgery and now spends most of his time in bed or in a wheel chair. Bezark claims he fell when struck by Hyman Merkins, an intoxicated patient.

Bezark testified that as he entered a back door of the home, Merkins blocked his passage. Merkins was drunk, noisy and abusive, with the smell of intoxicating beverage on his breath. Merkins finally stepped aside and after an exchange of remarks, Merkins struck Bezark, who fell and fractured his right femur.

Rosemary Scott, defendant's receptionist, and John Griffiths, its manager, both located on the first floor, heard loud voices in the hallway but could not identify the voices and did not see the occurrence. Phillip Marcoff, a wheel chair patient, heard the argument through a closed door and was able to identify the voices of Bezark and Merkins. Merkins denied hitting Bezark, said he was in his room and heard Bezark "calling dirty names." He opened his door, looked out, saw Bezark lying on the floor, but did not go near him and stayed in his room.

109

There is testimony that prior to the occurrence Merkins was drunk four or five times a month and, when drunk, was argumentative and wanted to fight. Defendant's records show that Merkins was found intoxicated on the premises 27 times between January 7, 1957, and November 27, 1957. Marie Boehm, a nurse, testified that when she observed Merkins was intoxicated, she would tell Dr. Leonard Tilkin, the president and medical director. When Merkins was intoxicated, he was stubborn and argued with the patients, and that sometimes they would put him to bed and strip him. Griffiths, the manager, cautioned Merkins to conduct himself properly, control his personal habits and get along with the other patients in the home.

We have considered the many contentions of defendant but have decided to limit our opinion to two basic issues: (1) whether plaintiff's evidence established actionable negligence; and (2) whether a new trial should have been granted because of newly discovered evidence.

On the question of negligence of the home in failing to exercise reasonable care to prevent the alleged assault, defendant contends that to impose liability upon it, plaintiff was required to establish that there was danger of assault on plaintiff, of which danger defendant had knowledge and reasonably should have anticipated, and failed to take due care to prevent. We have examined the cases cited and believe a discussion of them is unnecessary, because of our view of defendant's responsibility toward its patients.

The care of aged persons is a matter of increasing public concern to everyone. Many require such constant care, supervision and attention so as to make it difficult or impossible for them to live alone or with their families. Institutions and nursing homes for their care are crowded, understaffed and underfinanced, with long waiting lists. The residents and pa-

tients, because of their age or ill-health, are weak, frail, fragile and very susceptible to injury. Many are confused, weak of mind and irresponsible. Others are irritable, belligerent and combative and are quite capable of harm to their fellow patients.

■ ■ Nursing homes and similar institutions for the aged cannot be held to be insurers of the safety of their patients. They owe their patients ordinary care to protect them from any danger or injury which might be reasonably anticipated. As to dangers reasonably to be anticipated from acts of other persons under the hospitals' control, reasonable care and attention must be exercised for the safety and well-being of their patients, in proportion to the circumstances and their ability to look after their own safety. (Sylvester v. Northwestern Hospital of Minneapolis (1952) 236 Minn. 384, 53 N.W.2d 17; Tabor v. State (1946) 62 N.Y.S.2d 380, 382; Restatement of Torts, § 320.) Where there is greater danger and hazard, there must be a corresponding exercise of attention for the purpose of preventing injury to another, to exercise what the law terms "ordinary care." Commonwealth Electric Co. v. Melville (1904), 210 Ill. 70, 78, 70 N. E. 1052.

Defendant contends there is no evidence of its actual knowledge of Merkins' intoxication on the day of the assault, and no prior evidence that Merkins had any dangerous propensities, intoxicated or otherwise. They argue that an element of liability is absent—notice of the danger of assault, or facts to show that it should have reasonably anticipated the danger, and failed to use due care to guard plaintiff against the assault. Meyer v. Riverview Park Co. (1950) 342 Ill.App. 218, 96 N.E.2d 379; Worcester v. Theatrical Enterprises Corp. (1938) 28 Cal.App.2d 116, 82 P.2d 68.

■ ■ Although defendant had no knowledge of Merkins' intoxication on the day of the assault, the

record clearly shows that defendant was on notice that Merkins was frequently intoxicated, argumentative and required discipline. As stated in Sylvester v. Northwestern Hospital of Minneapolis, 236 Minn. 384, 53 N.W.2d 17, authorities recognize that "drunken behavior is unpredictable; also that slight irritations, real or imaginary, may cause outbursts of anger and lead to aggressive acts." We think, considering the frequent intoxication of Merkins, that in the exercise of ordinary care, defendant ought to have reasonably anticipated the likelihood that while in an intoxicated condition he might wander around the home and injure other residents by falling upon them, or by good-natured or ill-natured scuffling. As stated in Kahn v. James Burton Co. (1955) 5 Ill.2d 614, 622, 126 N.E.2d 836:

> "All men are presumed to know those things which are matters of common knowledge and must be held, in the absence of actual knowledge or notice, to have reasonably anticipated such occurrences as in the ordinary nature of things reasonable men should know will probably occur."

In the exercise of reasonable care, we believe he should have been segregated if they could not or would not prevent his intoxication, or removed from the home.

██ We are not persuaded that the manifest weight of the evidence shows that plaintiff was injured by a fall and not by an assault. It is a jury question as to whether Bezark provoked the assault and failed to exercise reasonable care for his own safety. (Meyer v. Riverview Park Co., 342 Ill.App. 218, 96 N.E.2d 379; Bowman v. O'Brien (1940) 303 Ill.App. 630, 25 N.E.2d 544; Forsberg v. Around Town Club, Inc. (1942) 316 Ill. App. 661, 45 N.E.2d 513.) It is unnecessary on this appeal to discuss or determine jury instructions or evidentiary questions except as done so hereafter. It

is our opinion that plaintiff's evidence in the record fairly tends to prove actionable negligence on the part of defendant.

The principal question in this appeal is whether a new trial should have been granted because of newly discovered evidence. It is claimed that before and during the trial, plaintiff deliberately concealed and denied his conviction of an infamous crime, a violation of the Harrison Anti-Narcotics Act, involving the sale of narcotics. Subsequent to the trial, defendant discovered and procured evidence of such a conviction.

On February 2, 1959, an order was entered advancing the case for trial. On March 20, 1959, defendant filed an interrogatory to be answered by plaintiff: "Have you ever been convicted of a felony?" On May 18, 1959, this interrogatory was answered, "Yes," and the case went to trial on May 19, 1959. During the examination by defendant of plaintiff as an adverse witness under section 60 of the Practice Act, the following proceedings were had in the presence of the jury:

> "Q. Mr. Bezark, were you ever convicted of a crime involving the sale of narcotic drugs?
> "A. No, sir.
> " . . .
> "Q. Were you in the year 1933 convicted by a federal district court in New York, New York of a violation of the Harrison Anti-Narcotics Act, involving the sale of narcotics?
> "A. No, sir."

Thereafter, at plaintiff's request and defendant's consent, the court instructed the jury to disregard these questions and answers.

The affidavit filed in support of defendant's post-trial motion for new trial, in addition to portraying the foregoing, shows that plaintiff on May 22, 1933,

113

was convicted in the United States District Court, Southern District of New York, of two counts in violation of the Harrison Anti-Narcotics Act on a plea of guilty, under the name of Harry Morris, and was sentenced to four years imprisonment in the United States Penitentiary, Leavenworth, Kansas. The affidavit includes supporting certified copies of documents and records. After a hearing, the court denied defendant's post-trial motion.

■ We believe the new trial affidavit affirmatively shows that plaintiff was convicted of an infamous crime under Illinois law. (Ch. 38, ¶ 192.28–2.11, § 587, Ill. Rev. Stat. 1959.) Plaintiff pleaded guilty to a violation of U.S.C., Title 21, section 174, section 1, Act of February 9, 1909, as amended, U.S.C., Title 21, section 173, section 37, U.S.C.C. (Harrison Anti-Narcotics Act) which is directed against the transportation, concealment or sale of narcotic drugs.

■ In a civil case, the credibility of a witness or a party may be attacked by showing that the witness or party has been convicted of an infamous crime, and one of the methods of proving the conviction is by the witness himself. In the event of denial, the conviction may be proven by other witnesses cognizant of such conviction or by any other competent evidence. It is not necessary to prove the conviction by the record itself. (Ch. 51, § 1, Ill. Rev. Stat. 1959; Bailey v. Beall (1911) 251 Ill. 577, 585, 96 N. E. 567; Gage v. Eddy (1897) 167 Ill. 102, 108, 47 N. E. 200; Keehn v. Braubach (1940), 307 Ill.App. 339, 362, 30 N.E.2d 156.) Proof of previous conviction for an infamous crime is allowed to be shown for no other purpose than to affect the credibility of the witness. There is no statutory limitation as to the time of such previous conviction. People v. Buford (1947) 396 Ill. 158, 162, 71 N.E.2d 340.

Applications for a new trial on the ground of newly discovered evidence are not looked on with favor by the courts and are subjected to close scrutiny. (28 I.L.P., New Trial, § 41.) Where there is diligence, and the newly discovered evidence is not cumulative, and is such as to strengthen the conviction that justice has not been done, a new trial should be granted. The courts should not hesitate to grant a new trial where it is likely that the newly discovered evidence will change the result on a new trial. (Knight v. Citizens Coach Co. (1940) 307 Ill. App. 251, 257, 30 N.E.2d 180.) Newly discovered evidence which will meet the surprise evidence will warrant the granting of a new trial, if there is a showing of diligence. Clement v. Bladworth (1911) 166 Ill.App. 68, 70, 71; Felver v. Judd (1898) 81 Ill. App. 529, 532.

Defendant contends that because there is no corroborating testimony in support of Bezark's testimony that Merkins was intoxicated and struck him, the credibility of Bezark was of the utmost importance in this case. When testifying as an adverse witness, Bezark admitted that for several days after the occurrence he did not tell anyone, including his own doctor, that Merkins struck him and caused his fall. Defendant argues that with so much of the vital occurrence testimony uncorroborated, defendant was entitled to have the jury properly informed as to plaintiff's conviction of an infamous crime.

The record is sufficient to show that defendant exercised due diligence to obtain the evidence of plaintiff's infamous crime prior to trial. Because of Bezark's delay in answering the felony interrogatory, his denial of the Harrison Act conviction was clearly a surprise to defendant. We believe the record indicates that Bezark deliberately concealed his conviction, and that defendant did not have a reasonable opportunity to

115

meet Bezark's surprise denial of his Narcotic Act conviction.

Under the circumstances, and for the reasons stated, we think defendant did not receive a fair trial, and its motion for a new trial should have been granted. Judgment is reversed and the matter remanded for a new trial.

Reversed and remanded.

KILEY, P. J., and BURMAN, J., concur.