ADAH L. TAYLOR GARRUS et al. Appellants, vs. HARRY C. DAVIS et al. Appellees.

*Opinion filed April 23, 1908—Rehearing denied June 5, 1908.*

1. EVIDENCE—*fact that witness is called by adverse party does not qualify her to testify in her own behalf.* The fact that the complainant in a bill to contest a will calls a defendant beneficiary as a witness for the sole purpose of proving the genuineness of certain letters to the testatrix supposed to have been written by the witness and relied upon by complainant as evidence tending to show undue influence, does not remove the disqualification of the witness, under section 2 of the Evidence act, to testify in her own behalf upon the issues in the case.

2. SAME—*expert cannot testify that person described in hypothetical question was capable of making a valid will.* A medical expert may give his opinion, in answer to a hypothetical question, that the person described in the question is sane or insane, but he cannot give an opinion as to whether such person was capable of executing a valid will.

3. SAME—*conversations with the testatrix prior to execution of will are competent upon question of mental capacity.* Upon a bill by a daughter to contest her mother's will for undue influence and want of mental capacity, a conversation between the mother and daughter, in the presence of a third person, before the will was executed, which concerns persons who are defendants to the bill, is admissible upon the question of mental capacity without a special showing, in the first instance, that what was said by the daughter was necessary to an understanding of what was said by the mother.

APPEAL from the Circuit Court of Cook county; the Hon. C. M. WALKER, Judge, presiding.

KREMER & GREENFIELD, for appellants.

RITSHER, MONTGOMERY, HART & ABBOTT, and TATGE, ABBOTT & KOEPKE, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This suit was begun by appellants filing a bill in the circuit court of Cook county to contest the will of Elizabeth L. Taylor, deceased. Complainant Adah L. Taylor

Garrus is the daughter of Mrs. Taylor and Ninus Garrus is her husband. Mrs. Taylor formerly resided in Peoria, where she was married, and continued to so reside until after the death of her husband. At the time of her death she was the owner of property of considerable value, located principally in Peoria. She derived title to said property from her husband, and at the time of her death it was producing a net income of about $5000 a year. Mrs. Garrus was her only child. Mrs. Taylor moved from Peoria to Chicago to reside in 1892. In 1898 she manifested symptoms of paralysis agitans, or palsy, which, according to the testimony, is a progressive disease and became fully developed in her in 1903. In 1900 she went to Europe to be treated by specialists. Originally she had been a believer in the christian religion, but afterwards became a believer in the doctrines taught by Ingersoll and later adopted theosophy. After remaining in England and Sweden for some time and receiving treatment for her disease with little or no apparent benefit, she went to India, where she met a man named Lallan, whom she had first met at the Congress of Religions at the World's Fair in Chicago, in 1893. While there she also met Vivikananda, who introduced her to the Lama of Thibet, and she consulted these parties in the hope that they might be able to relieve her of her disease. Being disappointed in this respect she returned to London, where she had left her daughter, and together they went to Paris, where she employed a doctor to treat her. This doctor, after treating her some time without any beneficial results, advised her to employ a masseur, and appellant Ninus Garrus was so engaged by her. While Garrus was treating Mrs. Taylor an attachment sprang up between him and her daughter, Adah, and they were married. Mrs. Taylor appears to have been opposed to the marriage and ever afterwards entertained a strong antipathy towards Dr. Garrus. There is evidence to the effect that she believed him to be a black magician, and that he could change his form from

that of a man to a woman, and perhaps other forms. She also appears to have conceived the notion that Dr. Garrus was able to exercise some influence which prevented her from recovering from her disease, and that he was doing so. In 1902 the testatrix, with her daughter, returned to Chicago, and shortly afterwards Dr. Garrus came also. He and his wife did not reside in the house with Mrs. Taylor but lived in a building near the one she resided in. The will was executed in June, 1904. By it the testatrix's property was given to two trustees, and they were directed to pay to Mrs. Garrus $150 per month so long as she lived in this country. In the event of her leaving the country these payments should cease during her absence. The trustees were authorized also, if Mrs. Garrus became sick and in need while residing in this country, to pay her such additional sum for her support and the expenses of her sickness as the trustees should deem sufficient for her needs. The trustees were directed to pay the father and mother of the testatrix $25 per month so long as they or either of them lived, and they were given the right to occupy during their lives, free from rent, the house owned by the testatrix in Orlando, Florida. The will further provided that in the event of the death of the testatrix's daughter without issue surviving her, the trustees should convey all the property that remained to six nieces of testatrix's deceased husband and one of her own, and in the event of the daughter leaving issue surviving her, then the property was to go to said seven nieces and the children of testatrix's daughter, share and share alike. This is the substance of the most material provisions of the will. The bill charged that Mrs. Taylor was of unsound mind at the time she executed the will, and that she was unduly influenced by three of her husband's nieces, Mrs. Jack, Mrs. Patterson and Mrs. Davis, who were beneficiaries under the will, to make said will; that they represented to her, at various times, that the spirit of her deceased husband had appeared to them and requested

them to urge testatrix to execute some paper, and that his spirit was displeased because she had not done so. As is not unusual in such cases, the evidence was conflicting. The jury found that the testatrix was not of unsound mind and memory and was not unduly influenced to make the will, and the court entered a decree in accordance with the verdict of the jury, from which decree this appeal is prosecuted.

As the decree must be reversed for errors committed on the trial we will avoid any comment upon the merits of the case, but it will be necessary for us to refer to some things appellants' evidence, standing alone, tended to prove. Some of this evidence tended to show that the relations existing between Mrs. Taylor and her husband's nieces, especially the three above named, were not friendly, and that she had talked to others about it and had said they were displeased because her husband gave her all of his property and did not give them any of it; that they were also much displeased when her daughter was born, and she had feared they might kidnap her. There was evidence that on account of these things Mrs. Taylor for a long time entertained a strong antipathy toward these nieces and that this feeling existed until she became a believer in theosophy. It was testified to that while this feeling on the part of Mrs. Taylor existed she desired and endeavored to conceal her whereabouts from said nieces. Afterwards they became reconciled and the nieces were frequent visitors at her house. Appellants had at the trial a letter dated Chicago, April 10, addressed "Dear Elizabeth" and signed "Adah Jack." The envelope was addressed: "Mrs. Elizabeth Taylor, Theosophical Rooms, Atheneum Bldg., city.—Important.—Please forward." On the hearing they called Mrs. Jack as a witness and inquired of her as to the handwriting of the letter and signature to it and the endorsement on the envelope. She testified they were all in her handwriting and that the letter was enclosed in the envelope and sent through the mails. Appellants also produced two other letters bearing

no date, addressed to "Dear Elizabeth," and signed, "Lovingly, Mame." Mrs. Patterson was called as a witness by appellants, and in answer to questions propounded testified that the letters were in her handwriting; that the signatures were her genuine signatures. On cross-examination counsel for appellees attempted to interrogate the witness about matters other than the letters, but the court sustained the objection to such cross-examination, whereupon counsel stated they would reserve the right to recall the witness if the letters were introduced in evidence. These letters were afterwards admitted in evidence on the part of appellants, and at the conclusion of their evidence the appellees called Mrs. Jack and Mrs. Patterson to the stand and over the objections of the appellants they were permitted to testify fully as to all the issues in the case. The ruling of the court in permitting these witnesses to testify in their own behalf is assigned as error.

The witnesses were beneficiaries under the will and defendants to the suit, and under the second section of our statute on evidence were incompetent to testify as witnesses unless called by the opposite party. Appellees' position is, that while they were by the statute rendered incompetent, upon their own motion, to testify in their own behalf, when they were called by the opposite party to testify as to any matter whatever, the disqualification was thereby removed and they became competent witnesses for the purposes of testifying upon any issue involved in the case, and their testimony could not be confined to the subject matter about which they had been examined by the opposite party. This appears to have been the rule at common law, and appellees cite decisions of the courts of several States which sustain their contention. In our opinion, however, this question must be determined from a construction of our statute.

The first section of the act in regard to evidence and depositions removes the common law disqualification on account of interest in the suit or proceeding except as limited

by subsequent sections. The second section of the act renders any party to a suit incompetent to testify as a witness "of his own motion or in his own behalf, * * * when any adverse party sues or defends as * * * executor, administrator, heir, legatee or devisee of any deceased person, * * * unless when called as a witness by such adverse party so suing or defending," except in certain cases specified. The prohibition of this section of the statute is against the party testifying in his own behalf of his own motion. There is no prohibition against the adverse party calling as a witness a party disqualified by the statute from testifying on his own motion and in his own behalf, and if such adverse party chose to do so he could examine the witness upon every matter pertinent and relevant to the issues involved. We do not, however, understand and construe the statute to have been intended to mean that if in such case the witness is called by the adverse party to testify as to one thing or upon one matter the disqualification against his testifying of his own motion and in his own behalf is waived or removed and that he is thereby rendered competent to testify upon all the issues involved in the case. To so construe the statute would be in a measure to defeat its objects. The letters referred to were written to the testatrix by two of the parties who were charged with having unduly influenced her to execute the will. Said letters were competent and relevant testimony in behalf of the appellants upon this issue but could not be received in evidence until their genuineness had been first proven. It is altogether possible that the proof could only be made by the writers of the letters. In testifying as to the genuineness of these letters the witnesses were not testifying in their own behalf but were testifying against their own interest. Assuming that the letters came into the hands of appellants in such a way that they were warranted in believing they were written to testatrix by the two nieces, it was necessary to establish, by proof, their genuineness, in order that they

might get the benefit of them in evidence. If it were the fact, as it might well be, that their genuineness could not be proven by any one but the supposed writers, appellants were confronted with the situation that they must either make this proof by the writers of the letters or be denied the benefit of them as testimony in the case. If the rule contended for by appellees is to be followed, these witnesses, when called for the purpose of making that proof by appellants, would have been thereby rendered competent to testify upon all the issues in the case upon their own behalf, even if they had denied that they had written the letters. To so apply the law would seem both unreasonable and unjust. These witnesses were not called by appellants to testify upon any issue involved under the pleadings, but simply for the purpose of making preliminary proof necessary to the introduction of written evidence. As to the subjects upon which they were examined by the appellants, they vouched for the credibility of the witnesses and could not have impeached them upon this subject. In practice it often happens that a witness is called by a party to testify upon a particular subject. The same witness may be called by the adverse party to testify upon other subjects, and in such case the party first calling the witness is not to be considered as vouching for the truth of his testimony while testifying at the instance of the adverse party. What the letters offered in evidence proved or tended to prove was a subject for determination by the jury. Calling the supposed writers of them to make the preliminary proof necessary to their introduction we hold did not render the witnesses competent to testify in their own behalf upon the issues of undue influence and unsoundness of mind made by the pleadings, and we cannot adopt the common law rule even if it has the sanction of courts in other jurisdictions. Numerous cases are to be found where a witness who was incompetent to testify in his own behalf was called by the adverse party to testify as to a conversation or transaction, and after

he had testified to parts of such conversation or transaction it was held competent for the other side to have him testify as to all of such conversation or transaction, and these cases do not go to the extent of holding that because the witness was called by the adverse party he was rendered competent to testify upon all the issues in the case.

*Merchants' Loan and Trust Co.* v. *Egan*, 222 Ill. 494, supports our view of the law upon this subject. A party named Sexton was charged with having certain personal property belonging to the estate of Thaddeus J. Butler, deceased. He was brought before the probate court under section 81 of the statute on administration and examined on oath touching the matter. Afterwards Egan, executor of Butler's estate, brought an action in trover against Sexton to recover the value of the property he was charged with having and concealing. Pending the trial of the case Sexton died, and his executor, the Merchants' Loan and Trust Company, was substituted as defendant. The defendant, in the trial of the case, offered in evidence the testimony of Sexton heard in the probate court on the citation, which had been taken down in shorthand, and contended that because Sexton had been called to testify in the probate court he was thereby rendered a competent witness to testify as to all matters involved in the case on trial. The position of the Merchants' Loan and Trust Company upon that question was the same as that of appellees here. We held that the testimony of Sexton taken upon the citation was heard at the instance of the court and not of the executor, and that that proceeding was a different case from the one on trial, and for those reasons the evidence offered was incompetent. That we then entertained the same view of the law as is expressed in this opinion appears from the following quotation from the opinion in that case (p. 503) : "By introducing Sexton's testimony taken at the hearing on the citation in the probate court he was not thereby called as a witness by the adverse party, and his incompetency as a wit-

ness, outside of the admissions made on this examination, was not affected. He was called as a witness by appellee on the hearing below and asked one or two questions as to the possession of the bonds. This appellee clearly had a right to do without making him a witness as to all questions, under the first exception to said section 2, which states that in any such action, suit or proceeding a party or interested person may testify to facts occurring after the death of such deceased person, etc."

Our conclusion therefore is, that the court erred in permitting the witnesses mentioned to testify upon the issues involved in their own behalf.

Dr. Moyer was called by appellees to testify as a medical expert upon the question of the testatrix's soundness of mind. In answer to a hypothetical question covering five printed pages of the abstract the doctor gave it as his opinion that Mrs. Taylor was sane. He was then permitted to answer, over objections of appellants, whether such a person as was described in the hypothetical question was capable of executing a valid last will and testament. The answer was in the affirmative. This, we think, was error. In *Baker v. Baker,* 202 Ill. 595, this court held that the trial court properly refused to permit the question whether the testator was able to understandingly execute a will to be answered. Permitting witnesses to answer a similar question was held to be erroneous in *Schneider v. Manning,* 121 Ill. 376. The witnesses being examined in those cases were not experts, but we think that could make no difference. While the witness may be an expert upon the subject of mental and nervous diseases and may give his opinion in answer to hypothetical questions as to the condition of the party's mind and whether a party was sane or insane, he is not called upon to advise the court and jury as to the degree of mental capacity necessary to 'enable one to make a valid will. In section 392 of Page on Wills the author says: "This form (In your judgment was testator competent to make a

will?) finds justification in the language used in many cases where the precise point has not been presented for consideration, but it is inherently vicious, as it presupposes that the witness knows what degree of capacity the law requires in order that testator may make a valid will, and, in addition to the opinion of the witness as to testator's sanity, such a question calls for the opinion of the witness as to the law. Accordingly the courts which have considered this exact point have held that such question is improper and should not be allowed."

A witness for appellants testified to having heard a conversation between Mrs. Garrus and her mother about the nieces after Mrs. Patterson had been there. She was asked to tell what the conversation was, and counsel objected to the witness stating anything that was said by Mrs. Garrus, "on the ground that she was the complainant in the suit and the defendants were not present." The objection was sustained. Counsel for the appellees do not deny the rule that conversations with the testatrix prior to the execution of the will are competent on the subject of mental condition, and say in their brief, "If what the mother said would be unintelligent except taken in connection with what the daughter said, then, perhaps, it may have been competent," but insist that appellants should have in some way made it apparent to the court that what was said by Mrs. Garrus in the conversation was necessary to an understanding of what her mother said. We think it must be assumed from the question that what the daughter said was necessary to an understanding of what her mother said, and no special showing upon that subject was required.

We think the court might well have admitted the proof offered to be made by appellants by the three nurses attending Mrs. Taylor, that they did not write the names of the beneficiaries of the will on the paper given to Judge Pinckney, who drew the will and who testified the paper was not in Mrs. Taylor's handwriting. Appellants also offered tes-

timony that previous to the making of the will Mrs. Patterson visited Mrs. Taylor very frequently, and inquired of the same witness as to how often these visits were made after the will was executed, but this inquiry was not permitted to be answered. We think it would have been proper to have allowed the answer, but these last two questions were not of a very material character, and of themselves would not be sufficient to justify a reversal in the absence of more serious errors. We merely call attention to them in view of the fact that the decree must be reversed on other grounds mentioned.

For the errors indicated the decree is reversed and the case remanded. *Reversed and remanded.*