Josephine M. Blumb, Administratrix of the Estate of
Frank W. Blumb, Deceased, Appellee, v. Ben Getz,
Appellant.

Gen. No. 8,987.

Opinion filed January 17, 1938. Rehearing denied April 5, 1938.

CLARENCE W. HEYL, of Peoria, for appellant.

CASSIDY & KNOBLOCK, of Peoria, for appellee.

MR. JUSTICE RIESS delivered the opinion of the court.

Plaintiff appellee, Josephine M. Blumb, administratrix of the estate of Frank W. Blumb, deceased, filed suit against the defendant appellant, Ben Getz, and recovered judgment in the circuit court of Tazewell county in the sum of $3,000 for the benefit of the next of kin of plaintiff's intestate, from which an appeal was taken to the April term, A. D., 1936 of this court. The judgment was reversed upon the ground that there was no evidence tending to prove due care on the part of appellee's intestate and that a motion for a directed verdict in favor of the defendant should have been given by the trial court at the close of all the evidence. No further assignments of error were considered at that time by the Appellate Court. (*Blumb v. Getz,* 286

Ill. App. 623.) The record was further reviewed upon appeal to the Supreme Court, wherein it was held that there was nothing in the evidence which would have justified the trial court in finding, as a matter of law, that the plaintiff's intestate was not in the exercise of due care or was guilty of contributory negligence at or just prior to the time of the accident. The judgment was there reversed and the cause remanded to the Appellate Court with directions to consider the assignment of errors other than the above, if any appear, and thereupon affirm the judgment of the trial court or to reverse and remand the cause for a new trial. (*Blumb v. Getz,* 366 Ill. 273.)

The complaint consisted of two counts, in the first of which it was charged that Ben Getz was operating and managing a motor vehicle in his own behalf and as agent and servant of Ross C. Adams, on State highway No. 9, between the cities of Pekin and Morton in Tazewell county; that plaintiff's intestate, Frank W. Blumb, was walking along said highway in a westerly direction and was in the exercise of due care and caution for his own safety; that the defendant Ben Getz carelessly, wrongfully and negligently suffered and permitted said automobile to run against intestate and knock him down upon the highway, causing fatal injuries, from which he died on December 2, 1933.

The second count alleges that plaintiff's intestate was walking on said public highway with due care and caution for his own safety and stopped to pick up his glove, which he had dropped on said highway, when Ben Getz, in his own behalf and as the agent of the defendant Ross C. Adams, then and there approached plaintiff's intestate and negligently, carelessly and unlawfully failed to give reasonable warning or stop his automobile before striking said intestate and failed to use every reasonable precaution to avoid injuring him, but approached so rapidly that he was unable to re-

move himself from the path of the automobile driven by defendant Ben Getz, contrary to sec. 40 of the Illinois Motor Vehicle Act, Cahill's Ill. St. 1933, ch. 95a, ¶ 41; that as a result of said negligence plaintiff's intestate was struck and fatally injured.

The defendants Ben Getz and Ross C. Adams answered and denied each and all of the allegations of the complaint, and alleged that the death of intestate was due to his own carelessness and negligence. At the conclusion of the plaintiff's case, upon her motion, Ross C. Adams was dismissed as a party defendant, leaving Ben Getz as the sole party defendant.

It appears from the testimony that the accident which resulted in the death of plaintiff's intestate took place on State highway No. 9, a hard-surfaced road extending in an easterly and westerly direction between the cities of Pekin and Morton, Illinois, of 18 feet in width, with dirt shoulders 6 feet in width on each side thereof.

The road ran in an almost straight line so that a person driving an automobile could see anything ahead and so, also, could a pedestrian on the road observe the approach of an automobile. The home of John W. Nord, a brother-in-law of Frank W. Blumb, the deceased, was located on the north side of route 9. On the day of the accident Blumb and Nord left the latter's house to go hunting. They proceeded in an easterly direction upon said highway and on the north side of the pavement. The sun was shining brightly, the atmosphere was clear and the pavement was dry. Nord and Blumb stopped temporarily while the latter was putting shells in his belt. He took out of his pocket a package of cigarettes, lighted one, and they then continued along the highway. Blumb discovered, after they had proceeded about 200 feet, that he had dropped one of his gloves at the place where he had lighted his cigarette. He turned and retraced his steps in order

to recover it. From Nord's testimony it appears that when the deceased started back, he was walking on the shoulder of the highway adjacent to and north of the hard surface reserved for automobiles. Nord proceeded along the highway and the automobile, driven by Getz, passed him going in a westerly direction at a speed, according to Nord, of 50 miles per hour. The witness testified that he walked on about 40 feet farther after the car passed him; that he turned around and saw the car swaying to the right and left across the black line in the center of the road, and that he then saw a dark object lying about the middle of the road which he found, upon returning, to be the body of the deceased. When Nord turned around he was approximately 450 feet east of the body.

Raymond Strubhar, a witness called on behalf of the plaintiff, testified that he was about 200 feet from the highway where the accident happened, when he saw Blumb, the deceased, take two or three steps southwesterly across the highway and then saw him bend over; that at the time the deceased was bending over he was about two feet north of the black line and that at that time, the automobile was a distance of 20 or 25 feet away. Both of these witnesses testified that they heard no horn or warning signal prior to the accident and that the automobile was traveling at a speed of 50 miles per hour. Strubhar further testified that after the car struck the deceased it "slid" his body about 12 feet and then proceeded about 100 feet further before it stopped; that just prior to the time it struck the deceased it was swerving across the road toward the south.

It can be gathered from the testimony that there was very little traffic upon this highway at the time of the accident and that the car driven by the defendant was the only one that was actually proceeding over and along this highway, although an automobile driven by

one Williams was proceeding in an easterly direction but was, at the time, west of the intersection of State routes 9 and 24. It is evident that this driver came up after the accident had happened.

In reviewing the record, the Supreme Court held that there was evidence from the rate of speed the car of the defendant was being driven, together with the fact that no warning signals were given according to the evidence most favorable to the plaintiff, which might tend to show negligence on the part of the defendant and that the question of due care cannot always be shown by direct proof, but that the evidence as introduced by the plaintiff should disclose facts from which it may be reasonably inferred that the plaintiff's intestate was in the exercise of due care; that the presence of the deceased upon the highway as a pedestrian was not negligence *per se;* that pedestrians and automobile drivers both have a right to the use of the highway and hold mutual obligations and reciprocal rights toward each other; that "the jury might take into consideration in its deliberations the fact, if it was a fact, that the pedestrian may have observed the coming automobile and believed that if it observed the speed law he would have ample opportunity, with safety, to step into the highway for the purpose of retrieving the glove which he had dropped. If the automobile was far enough away at the time to have justified a person in the exercise of ordinary care to have acted as the plaintiff did, it would not necessarily indicate such a lack of care on the part of the plaintiff as would amount, in law, to negligence. The question of contributory negligence is one which is preeminently a fact for the consideration of a jury"; that unless it can be said that the action of a person is clearly and palpably negligent, it is not within the power of the court to substitute its judgment for that of a jury which is provided for the purpose of deciding this as well as

other questions in the case. It was further held that sec. 78 of the Uniform Act regulating traffic on highways (Ill. State Bar Stats. 1935, ch. 121, p. 2796; Jones Ill. Stats. Ann. 85.207) placing the duty on a pedestrian when using a highway to keep on the left of the paved portion or on the left shoulder of the highway did not, under all circumstances, show negligence *per se* on the part of one violating this enactment.

The jury by their verdict found in favor of the plaintiff on both issues of fact as to negligence and contributory negligence. From a consideration of the whole of the evidence, we are constrained to hold that the verdict of the jury was not contrary to the manifest weight of the evidence.

One of the alleged grounds of error assigned concerned the testimony of the codefendant, Ross C. Adams, receiver of certain insolvent banks, who was examined by plaintiff under sec. 60 of the Practice Act, Ill. Rev. Stat. 1937, ch. 110; Jones Ill. Stats. Ann. 104.060, and by whom defendant Getz was employed at the time the cause of action against defendant Getz accrued. This testimony concerned the alleged agency relationship between the two defendants, wherein, the examination of the witness was limited to the question of agency and did not involve the question of negligence or contributory negligence or the facts and circumstances surrounding the injury and death of plaintiff's intestate. At the conclusion of plaintiff's testimony the suit was dismissed as to defendant Ross C. Adams, and an examination of this evidence discloses nothing prejudicial to the interest of defendant Getz. The fact that defendant Getz drove the car on the day in question was not controverted in any evidence offered or admitted on behalf of either party to this suit.

It is further contended by defendant, who had been called and examined by plaintiff under sec. 60 of the

Civil Practice Act (Ill. Rev. Stat. 1937, ch. 110, § 188; Jones Ill. Stats. Ann. 104.060) that the court erred in refusing to permit defendant's counsel to cross-examine him concerning the surrounding facts and circumstances of the injuries and death of deceased, including the manner and degree of care in which the car was driven by him at that time. The trial court properly held that the examination had been confined to the question of agency as between the codefendants, and no proof of facts or occurrences connected with the injury or death or on the issues of due care or negligence having been made from the defendant's testimony, the bar of the statute against his evidence (secs. 1 and 2, ch. 51, Ill. Rev. Stat. 1937; Jones Ill. Stats. Ann. 107.067, 107.068) was not lifted and the cross-examination was properly confined to the scope and subject matter of the direct examination. *Combs v. Younge,* 281 Ill. App. 339; *Garrus v. Davis,* 234 Ill. 326, 84 N. E. 924; *Van Meter v. Goldfarb,* 317 Ill. 620, 148 N. E. 391.

In the case of *Garrus v. Davis, supra* (p. 331) the Supreme Court said: "We do not understand and construe the statute to have been intended to mean that if in such case the witness is called by the adverse party to testify as to one thing or upon one matter, the disqualification against his testifying of his own motion and in his own behalf is waived or removed and that he is thereby rendered competent to testify upon all issues in the case. To so construe the statute would be in a measure to defeat its objects."

Appellant insists that it was reversible error to permit plaintiff to testify concerning the physical condition of the deceased prior to the time of his injury and death. No evidence was offered concerning his habits or otherwise affecting the issues of due care or negligence nor was plaintiff an occurrence witness, hence

we deem this assignment of alleged prejudicial error to be without foundation.

From an examination of the abstract and record, we find no prejudicial or reversible error appearing in the rulings of the court upon the evidence or in remarks or arguments of counsel for appellee.

Reversible error is further assigned in the refusal of the court to give certain instructions on behalf of the defendant. Twenty-four instructions were given in addition to that as to the form of the verdict on behalf of the defendant, many of great length and some repeating principles of law embodied in other instructions. Three were given on behalf of the plaintiff. The instructions of the court fully covered the rules of law upon which the defense was predicated, insofar as the same was based on the evidence. Many of the 24 additional instructions which were refused were either repeated rules of law or were palpably erroneous or inapplicable to the facts in the case. In appellant's argument only four of the refused instructions are discussed, being numbered one, two, six and ten.

The refusal to give instruction number six was especially stressed as reversible error in appellant's brief and argument. This instruction undertakes to instruct the jury that if the defendant "was suddenly confronted by sudden emergency at the time and place alleged," then the obligation of the defendant to use due care and caution was such care and caution as was commensurate with the "emergency then and there confronting him." The instruction did not cover care of the defendant immediately prior to or when going into the dangerous place, but only his care after he had arrived there, and was therefore properly refused by the trial court. *Krieger v. Aurora, E. & C. R. Co.*, 242 Ill. 544, 90 N. E. 266; *North Chicago St. R. Co. v. Cossar*, 203 Ill. 608, 613, 68 N. E. 88; *Chicago, M. & St. P. Ry. Co. v. Halsey*, 133 Ill. 248, 254, 23 N. E. 1028; *Franz v. St. Louis, S. & P. R. Co.*, 219 Ill. App.

558. In *Chicago, M. & St. P. Ry. Co. v. Halsey, supra,* the rule was stated, which was cited with approval in the subsequent decisions. In personal injury cases it has been repeatedly held that it is improper to give an instruction which limits the question of due care to the conduct of the plaintiff at the time of the injury, regardless of his conduct in placing himself in a place of danger.

An instruction must not limit the exercise of care and caution of the party to the time when he was in danger, regardless of his conduct in putting himself in that position. *Chicago, M. & St. P. Ry. Co. v. Halsey* and citations, *supra.*

Instructions one and two, which singled out certain facts or assumed facts in evidence, insofar as they are applicable herein, are covered in principle by other given instructions including 16, 19 and 26; number 10 is an argument covered in principle by number 24. In determining the sufficiency of instructions, the court will consider them as a series. *Reivitz v. Chicago Rapid Transit Co.*, 327 Ill. 207, 158 N. E. 380; *River Park Dist. v. Brand,* 327 Ill. 294, 158 N. E. 687; *People's Nat. Bank of Monmouth v. Fernald,* 252 Ill. App. 5. We are of the opinion that no prejudicial or reversible error appears in the ruling of the trial court on the instructions.

This court has examined and considered all other assignments of error and finds no reversible error in the record. The judgment of the circuit court of Tazewell county will therefore be affirmed.

*Judgment affirmed.*